PAMELA BARONE SPEED, EXECUTRIX (ESTATE OF MILDRED F. BARONE) *v.* ANTHONY F. DELIBERO ET AL.
(6906)

DUPONT, C. J., STOUGHTON and NORCOTT, Js.

Argued March 9—decision released July 11, 1989

*Christopher D. Bernard,* with whom, on the brief, was *Richard A. Fuchs,* for the appellant (plaintiff).

*Arnold J. Bai,* with whom, on the brief, was *Garie J. Mulcahey,* for the appellees (defendants).

DUPONT, C. J. The plaintiff, as executrix of the estate of the decedent, Mildred Barone, brought this action against the defendants, Anthony DeLibero, M.D., and Anthony DeLibero, M.D., P.C.,[1] alleging that the defendant Anthony DeLibero, negligently administered general anesthesia to the plaintiff's decedent during an outpatient medical procedure, thereby causing her death. After a jury trial, a verdict was returned in favor of the defendants. The plaintiff has appealed, claiming that the trial court erred (1) in unfairly and inaccurately summarizing the evidence in its charge to the jury, (2) in denying the plaintiff's motion for mistrial and motion in arrest of judgment which were based on jury misconduct,[2] and (3) in giving a supplemental charge to the jury that was erroneous and prejudicial to the

---

[1] The plaintiff originally also brought this action against other members of a professional group with which the defendant was associated. The case was withdrawn as to those defendants prior to trial.

[2] It was the defendants who moved for a mistrial. The plaintiff subsequently joined in the defendants' motion.

plaintiff.[3] We conclude that the trial court erred in denying the motion for mistrial and motion in arrest of judgment[4] based on jury misconduct, and, therefore, it is unnecessary to consider the plaintiff's other claims of error.[5]

The record reflects the following relevant facts. On Wednesday, December 23, 1987, the second day of deliberations, at approximately noon, the jury sent a note, signed by the foreman, to the court. The note indicated that the jurors wanted to rehear the named defendant's testimony regarding his monitoring of the decedent's blood pressure and pulse during the surgical procedure and also inquired whether they had to be in unanimous agreement on each paragraph of the plaintiff's complaint or whether they could disagree on one or more paragraphs and still arrive at a unanimous verdict. The note was marked as a court's exhibit.

After reading the note, the judge informed the jurors that they would recess for lunch and that the rehearing of the requested testimony would begin at 2 p.m., after which the jury would be excused until the next day. The judge also stated that due to the complexity of the unanimity question, the question would not be answered until 10 a.m. the next day and that deliberations would not resume until that time. While the jury was recessed for lunch, the foreman of the jury twice attempted to deliver a note to the sheriff, which the sheriff refused to accept, because the entire jury had not yet reassembled. When the entire jury was assembled and court reconvened, the sheriff accepted the note

[3] This claim includes a claim that the trial court abused its discretion by submitting interrogatories prepared by it to the jury in the middle of its deliberations.

[4] Because the bases of the plaintiff's motion for mistrial and motion in arrest of judgment were the same, it is unnecessary to consider these claims separately.

[5] The claimed errors regarding the court's charge and supplemental charge are not likely to recur on retrial.

and delivered it to the court. The note read: "We amend our previous request regarding Dr. DeLibero's testimony to that presented when Mr. Fuchs questioned on the blackboard the time discrepancy regarding monitoring of the patient's blood pressure. We wish to hear the doctor's answer to this only. Also, we wish to remain in deliberation after this testimony today until 5 p.m." The note was signed by the foreman and marked as a court's exhibit.

After reading the note, and being aware of the attempts to deliver the note during the luncheon recess, the court expressed concern that jurors had been deliberating outside the jury room and during the time period in which deliberations had been suspended, pending the court's response to the unanimity question. When the court inquired as to the circumstances under which the note had been written, the jury foreman stated that "there were four of us that had lunch together and we discussed this amongst ourselves," and then composed the note. According to the foreman, after the four had approved the note, a fifth juror was informed of its contents and agreed to it. The foreman also stated that "most" of the jury understood that a unanimous decision on each paragraph of the complaint was required and wanted a simple yes or no answer to the unanimity question posed in the first note. The entire jury was present during the colloquy between the court and the foreman.

The court then informed the jury that the lunchtime discussion had violated the court's instructions against deliberating outside of the jury room or in the absence of any juror and it repeated its instruction that no further deliberations were to take place until the unanimity question was answered, which would not be until Monday, December 28, 1987, rather than the following day as previously stated. The court told the jury that a decision as to what portion of the named defendant's tes-

timony would be reheard would also not be made until that Monday and excused the jury until 10 a.m. on that date.

After the jury was excused, counsel for both parties informed the judge that a juror seemed to have been attempting to express disagreement with the foreman's statements regarding the lunchtime discussion. The court called this juror back into the courtroom and inquired whether he had anything to add. The juror stated that he had wanted to say that he and another juror were not present at the lunchtime discussion. No further questions were asked of the juror, and he volunteered no other information.

The defendants then moved for a mistrial on the ground that the lunchtime discussion among the four jurors constituted improper deliberations, which rendered the trial unfair. The plaintiff subsequently joined in the defendants' motion. All parties agreed in oral argument on the motion that the subject of the second note was not an inconsequential procedural matter and that improper deliberations by some of the jurors had occurred outside the courthouse. The court denied the motion, concluding that the discussion among the jurors did not demonstrate a sufficient risk of prejudice or unfairness to either side and that the four jurors had not discussed the evidence. Following the court's acceptance of the jury's verdict for the defendants, the plaintiff filed a motion in arrest of judgment based on the same claim of juror misconduct, which the court denied.

The plaintiff claims on appeal that the lunchtime discussion amounted to improper jury deliberations and occurred under circumstances that created a probability of prejudice. We agree.

The note sent by the four jurors as a result of the discussion among them revised the jury's initial and

earlier request to rehear certain portions of the named defendant's testimony. The note indicated that, instead of wanting to rehear all of his testimony regarding his monitoring of the decedent's blood pressure and pulse as requested by the first note sent by the entire jury, the four jurors wanted to hear only a specific portion of that testimony. This request could not have been formulated without a substantive discussion of the named defendant's testimony.

It is not hypothetically likely that four members of the jury sought, in the second note, simply to clarify the thinking of the six members of the jury, as stated in the first note. We cannot assume logically that some or all of the jurors did not want to hear the testimony as originally requested at the time the first note was written, or assume that some or all of the jurors really meant to request a lesser amount of testimony when the first note was composed and that, therefore, the second note was a "unanimous" attempt to clarify the first note for all jurors, including the two absent jurors. We can assume logically only that the original note accurately embodied the concerns of some or all of the jurors. A substantive discussion of the evidence or issues in the case must have been conducted by four jurors in the absence of two jurors because, without such a discussion of the testimony, there could have been no determination by the four as to what specific lesser portion of the testimony was desired.

Although the foreman informed the court that the four jurors did not discuss any "evidence" in the case, it is not clear what he meant by "evidence" since he immediately went on to say that the four jurors wanted to "just hear that one portion of the testimony" because they wanted to continue deliberating and that "would be a shorter testimony." Since the foreman admitted that the four jurors discussed the amount of the named defendant's testimony they wanted to hear, while simul-

taneously stating that they had not discussed the evidence, it is not clear that the foreman understood that the word "evidence" includes "testimony." This reading of the foreman's remarks reconciles the foreman's statement that the four jurors did not discuss evidence and his admission to the court that the four jurors had met together in the absence of the other two jurors and discussed the contents of the second note "amongst ourselves."

In addition to the request to hear a lesser amount of the named defendant's testimony, the note also indicated that the four jurors wished to continue deliberating until 5 p.m. that day. The note was silent as to the previous concern about unanimity. By stating that they wished to continue deliberating, instead of waiting until the court answered the unanimity question posed by the entire jury in the first note, the note impliedly indicated that the unanimity question was no longer of importance to the four jurors or no longer needed to be resolved by the court.

It is essential to a fair trial that all of the members of a jury be present while deliberations take place. "The term 'deliberate' means '[t]o weigh, ponder, discuss, regard upon, consider . . . to weigh in the mind; to consider the reasons for and against.' Black's Law Dictionary (5th Ed.). Discussion is an integral part of deliberations." *State* v. *Washington,* 182 Conn. 419, 427–28, 438 A.2d 1144 (1980). The conclusion is inescapable that deliberations took place in violation of the court's instructions, outside of the jury room, in the absence of two jurors, and during a time when deliberations had been suspended.

The jury engaged in misconduct not only because they violated the court's instructions but because they violated the juror's oath in civil causes as provided in General Statutes § 1-25. The oath requires that a juror keep

his "own counsel" and his or her "fellows" counsel and further requires that a jury shall not speak to anyone about the matter in hand except "among" the jury and only "in court." The four jurors involved were engaged in deliberations that excluded some jurors and that occurred in a place other than the court house.

The reason for the requirement that all jurors be present to discuss a case together is to ensure a collective and unanimous factfinding process. The absence of one or more of them during deliberations can never be cured, even in the event all of them subsequently affirm a particular action of some of them. The give and take of a discussion without all jurors present subverts the collaborative process. There can never be a simulated recreation of the deliberations. The input of even one absent juror to the deliberative proceeding, whatever that input might have been, is forever lost, and cannot be revived. Ratification of the proceeding by an absent juror does not remedy the absence. Thus, even if the two excluded jurors eventually acquiesced in the content of the second note, which is not certain here, the damage to fairness and unanimity flowing from their absence during the discussion of the note cannot be repaired. The prejudicial impact on the verdict arising from the missing contribution of two of the jurors to a discussion could not be obviated even if it is assumed that the two jurors subsequently agreed to the contents of the note. See *State* v. *Couture,* 194 Conn. 530, 563, 482 A.2d 300 (1984), cert. denied 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985).

Every instance of jury misconduct does not require a new trial. *State* v. *Washington,* supra, 429; *Hamill* v. *Neikind,* 171 Conn. 357, 360, 370 A.2d 959 (1976). In reviewing juror misconduct, we use an objective standard in which the focus is on the nature and quality of the misconduct, rather than the mental processes of the jurors. *Williams* v. *Salamone,* 192 Conn. 116,

122 n.7, 470 A.2d 694 (1984). The question is whether the misconduct is of such a nature as to make it probable that the misconduct resulted in prejudice and an unfair trial.[6] Id. In a civil proceeding, the burden is on the moving party to establish the probability that the juror misconduct resulted in the denial of a fair trial. Id., 120.

"Juror misconduct in a civil proceeding does not by itself infringe constitutional rights; that question can only be determined after measuring the degree to which the misconduct affected the impartiality of the jury." Id., 120. The burden of establishing the misconduct and its deleterious effect on the fairness of the trial is on the party claiming to have been harmed by the conduct. *Hamill* v. *Neikind,* supra, 360 n.5. In this case, it is anomalous that it was the defendants, who eventually were the beneficiaries of the jury verdict, who first moved for a mistrial. Because the plaintiff joined in the defendants' motion, we decide, for the purpose of this appeal, that the burden of proof is on the plaintiff.

We conclude that, under the particular circumstances of this case, the jury misconduct at issue was sufficient to demonstrate a probability of prejudice, and that, therefore, the court erred in denying the motion for mistrial and the motion in arrest of judgment. "In this state it is required that jury verdicts be unanimous, requiring each juror to decide the case individually after impartial consideration of the evidence with the other jurors." *McNamee* v. *Woodbury Congregation of Jehovah's Witnesses,* 194 Conn. 645, 647, 484 A.2d 940

---

[6] Cases prior to *Williams* v. *Salamone,* 192 Conn. 116, 470 A.2d 694 (1984), indicate a standard of juror misconduct of such a nature as to make it *possible,* rather than *probable* that the misconduct resulted in prejudice. *Hamill* v. *Neikind,* 171 Conn. 357, 370 A.2d 959 (1976); *Felix* v. *Hall Brook Sanitarium,* 140 Conn. 496, 101 A.2d 500 (1953). *Williams* uses a standard of probability and it is that standard that we use in the present case.

(1984). In particular, the issue of liability should be determined by all of the jury because a party is entitled to a unanimous verdict. Id.

The deliberation among the four jurors was subversive of the parties' right to have each juror decide the case individually after impartial consideration of the evidence with all of the other jurors on the panel and to their right to a unanimous conclusion of the jury as to liability. The exclusion of the two jurors from these deliberations is particularly troublesome in light of the fact that the jury, as indicated by the contents of the first note, may have been having difficulty reaching a unanimous decision, having requested a clarification as to what a unanimous verdict required.

The defendants contend that, because there was no outside interference with the deliberation process, either by communication with a nonjuror or by the consideration of nonevidentiary materials, the plaintiff has failed to show the probability of prejudice. Unlike, however, those cases involving outside interference, in which the question is whether and how the communication or nonevidentiary materials had an impact on the deliberation process; see e.g., *State* v. *Asherman,* 193 Conn. 695, 736–42, 478 A.2d 227, cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1984); this case involves the exclusion of two jurors from deliberations. The exclusion did not result from any action of the parties or the court. Cf. *Aillon* v. *State,* 168 Conn. 541, 363 A.2d 49 (1975).

That exclusion necessarily deprived the plaintiff of her right to have the jury reach a unanimous verdict based on the consideration of the evidence by all of the jurors together. Litigants in a civil case have a constitutional right to have questions of fact decided by a jury. *Peck* v. *Jacquemin,* 196 Conn. 53, 72, 491 A.2d 1043 (1985). Questions of fact cannot fairly be decided by

a jury without the presence and interaction of all of the jurors, and without a specific knowledge by the jurors of what unanimity requires. The very fact that four jurors met to discuss the case augered ill for the concept of unanimity on the verdict.

The trial court erred in denying the motions of all of the parties for a mistrial and in denying the plaintiff's motion in arrest of judgment.

There is error, the judgment for the defendants is set aside and the case is remanded for a new trial.

In this opinion NORCOTT, J., concurred.

STOUGHTON, J., dissenting. I cannot agree with the conclusion by the majority that "a substantive discussion of the evidence or issues in the case must have been conducted by four jurors in the absence of two jurors." My review of the record leads me to the conclusion that the plaintiff has not sustained the burden that the law places upon her to demonstrate jury misconduct resulting in the probability of prejudice.

Every litigant has the right to have issues of fact tried by a jury. The named defendant, a physician, has endured a trial in which he was charged with malpractice and at the conclusion of which a jury decided in his favor. The trial judge considered the arguments that are now found to be persuasive by the majority and denied a motion for mistrial, a motion to set aside the verdict and a motion in arrest of judgment. We should not lightly reverse his judgment.

The majority opinion accurately sets out the law to be applied to this appeal. Where we part company is in some of the facts inferred and conclusions drawn by the majority, which differ from the facts found and conclusions drawn by the trial judge, and which rest principally upon no firmer ground than speculation.

This was understandably a hotly contested case. The court informed the jury at the end of the charge that it could have any testimony played back, but urged it to be as specific as possible in order to assist in the determination of that with which it was really concerned and to avoid playing back more than was necessary.

On December 23, 1987, the second day of deliberations, the jury submitted two questions to the court. One question asked for the named defendant's testimony during cross-examination by attorney Richard Fuchs regarding the monitoring of the patient's blood pressure and pulse during the procedure. The court informed the jury that it would take about one and one-half hours to provide that. The other question asked whether the jury had to reach unanimous agreement on each paragraph of the complaint, as opposed to some disagreement on one or more paragraphs or subitems while still coming to a unanimous verdict. The court said that, in consultation with counsel, it had been decided to have the jury hear the defendant's testimony beginning at 2 p.m., rather than running into the lunch hour, and that on the following morning he would answer the questions posed with an additional charge.

At 2 p.m., the sheriff handed the trial judge another note and said that the foreman had tried to give it to him twice before the entire jury had reassembled. The trial judge expressed concern about whether the jurors had talked about the case outside the jury room among themselves. The jurors were called into the courtroom, and the trial judge said that he was not sure how clear he had made it to them that their deliberations were to go forward only in the jury room, and that it was obvious that the note had been composed after they had been excused until 2 p.m.

The note said: "We amend our previous request regarding Dr. DeLibero's testimony to limit the testimony to that presented when Mr. Fuchs questioned on the blackboard the time discrepancy regarding monitoring of the patient's blood pressure. We wish to hear the doctor's answer to this only. Also, we wish to remain in deliberation after this testimony today until 5:00 p.m."

After reading the note, the court remarked that the request suggested that the members of the jury were feeling some time constraints. The jury was informed that the question concerning unanimity could not be answered that day and that no further deliberations would be permitted until that question had been answered. The court announced its intention to excuse the jury until Monday, December 28, 1987, at which time it would hear the named defendant's testimony and the answer to its question.

The foreman of the jury asked permission to speak and said that most of the members of the jury understood that they had to deliberate and render a unanimous decision on each paragraph and subitem and just wanted confirmation of that charge. He said that it was just a simple yes or no answer. The court replied that it was not a simple yes or no answer and involved more than that.

The court again reminded the jury that there were to be no deliberations outside the jury room, and said that unless the jurors could tell him that there were no discussions outside the jury room that led to the note, it would be assumed that there were such discussions.

The foreman of the jury responded that four of the jurors had had lunch together and discussed "this" amongst themselves. He said that before giving the note to the bailiff it was given to a fifth juror and that

the sixth juror was informed of it when he arrived and that he agreed to it. The foreman identified one of the jurors who had not been present at lunch. The other who had not been present identified himself. None of the jurors signified any disagreement with what the foreman had said.

When the court invited comment from counsel, the plaintiff's counsel objected to the continuance until Monday because he thought the delay too great. Defense counsel opined that the four jurors had discussed the case at lunch, despite the court's frequent caution not to do so, and moved for mistrial. The plaintiff's counsel, after reflection, joined in the motion.

The court then reconvened the jury and asked the foreman specifically whether, when the four jurors had lunch together, there was any discussion of the case, other than whether or not they wanted to have all the testimony read. The following then occurred:

"James Botten: That was the only discussion we—

"The Court:—What about the determination expressed that you would like to continue until 5:00 p.m.?

"James Botten: That was discussed partially during that period also.

"The Court: Anything discussed about the evidence itself or anything like that?

"James Botten: No, we did not discuss any—any of the evidence. Just the fact that we wanted to just hear that one portion of the testimony and that we wanted to continue because we thought it would be shorter testimony and we would therefore just like to continue until the end of the day."

Thereafter, the court expressed itself as satisfied that "[t]he discussion between those four jurors was limited

largely, if not exclusively, to procedural problems, nothing substantive." It thereupon denied the motion for mistrial.

During the argument on the motion for mistrial, the court observed that he customarily emphasizes to jurors that they are not to discuss the case except among themselves and then only in the jury room while considering their verdict. Although that instruction was not given when the jury was excused for lunch on the day of the episode complained of, defense counsel remarked that it had been given on frequent occasions during the trial, and the plaintiff's counsel said nothing to dispute that. Absent a fair indication to the contrary, we presume that the jury followed the court's instruction. *State* v. *Cavros,* 196 Conn. 519, 528, 494 A.2d 550, cert. denied, 474 U.S. 904, 106 S. Ct. 233, 88 L. Ed. 2d 232 (1985).

In this case, the foreman of the jury said specifically that the four jurors had not discussed any of the evidence. I am not willing to conclude, as does the majority, that the foreman did not understand that "evidence" includes "testimony." In the first place, the charge made it clear that "evidence" included "testimony." In the second place, the colloquy between the court and the foreman quoted earlier followed the court's inquiry as to whether there was any discussion of the case. Clearly, and as the plaintiff's counsel argued at the time, the note discussed by the four jurors was a clarification of what had been meant by the first request. The first note requested the named defendant's testimony during cross-examination regarding monitoring of the patient's blood pressure, and this was simply amended to limit the testimony to that presented when Fuchs questioned on the blackboard the time discrepancy regarding monitoring of the patient's blood pressure. The fact that the foreman sought to deliver the note even before all of the jurors had reassembled renders

it more logical to assume that it was this that was actually meant by the first request than to assume that the first note embodied the concerns of some or all of the jurors.

It is not really necessary to assume anything, however, because all of the jurors were present when the note was delivered, all were present in court when the note was read, and none expressed any disagreement with it. The request to continue deliberations that day was not in any sense an indication that the unanimity question was no longer of importance, nor did it suggest that the question no longer needed to be resolved by the court. It said only that the jury wanted to have played back less of the testimony than the court intended to have played back, and suggested that the jury could use the time remaining that day to deliberate on the questions raised by what the jurors heard in the testimony. In fact, the court had all of the cross-examination of the named defendant regarding monitoring of the blood pressure played back, exactly as requested originally. The amended request was an attempt at the specificity requested by the court during the charge. It did not address the unanimity concern at all, and we should not conclude that it was intended to withdraw that request. In any case, the court gave a supplemental charge on unanimity.

A ruling denying a motion for mistrial should not be overturned unless there has been a clear abuse of discretion resulting in manifest injury to a litigant. *Pisel* v. *Stamford Hospital,* 180 Conn. 314, 322, 430 A.2d 1 (1980). Every instance of jury misconduct does not require a new trial. *Williams* v. *Salamone,* 192 Conn. 116, 122, 470 A.2d 694 (1984). Absent misconduct brought about by the prevailing party, the burden is on the complainant to show prejudice. Id., 121. Moreover, as the majority opinion observes, "[t]he question

is whether the misconduct is of such a nature so as to make it probable that the misconduct resulted in prejudice and an unfair trial.''

The plaintiff has never attempted to show what specific probable prejudice she claims resulted from the amended request for testimony. Indeed, it is difficult to see how she could do so. She simply offers the conclusion that under the circumstances there is a probability of prejudice. The majority opinion acknowledges the need ''to measure the degree to which the misconduct affected the impartiality of the jury,'' and the fact that the burden is on the party claiming harm to demonstrate the probability that juror misconduct resulted in the denial of a fair trial. It assumes that the four jurors discussed the evidence while they were apart from the other two jurors, and then assumes that this assumed discussion had some impact on the verdict. It concludes that the plaintiff was deprived of her right to a unanimous verdict. In my judgment, this conclusion is not supported by, and is at odds with, the facts.

All of the jurors took part in the deliberations and eventually arrived at a unanimous verdict. I cannot conclude from my review of the record and briefs that there was juror misconduct resulting in probable prejudice to the plaintiff.