899 F.2d 15
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jack HOLT and L.C. Evans, Defendants-Appellants.
 Nos. 89-6070, 89-6092.
 United States Court of Appeals, Sixth Circuit.
 April 3, 1990.
 
 Before KENNEDY, NATHANIEL R. JONES and ALAN E. NORRIS; Circuit Judges.
 PER CURIAM:
 
 
 1
 Appellant Jack Holt appeals the District Court's denial of his motion for judgment of acquittal in this mail fraud and conspiracy to commit mail fraud case brought under 18 U.S.C. Secs. 1341 and 371. He argues that he was entitled to trial in Mississippi, rather than in Tennessee, since the offenses were committed in Mississippi and the government failed to prove by a preponderance of the evidence that venue was proper in Tennessee. Appellant L.C. Evans makes the same claim and in addition challenges the District Court's denial of several motions. We agree that venue in Tennessee was established and that all of the motions were properly denied. We therefore AFFIRM the District Court's judgment.
 
 
 2
 These cases involve use of the mails as part of a scheme to defraud an insurance company, Grain Dealers Insurance Company of Corinth, Mississippi, by staging an automobile accident and collecting the resulting insurance payment. Millard Parker bought and insured a 1982 Monte Carlo. L.C. Evans agreed to claim that he was driving a car with a boat in tow when he got into an accident with Parker and the 1982 Monte Carlo. Bobby Belk agreed to wreck the cars and boat at his father's salvage yard to make it look as though they had been in an accident. Lastly, appellant Jack Holt, sheriff of Alcorn County, agreed to furnish a false accident report.
 
 
 3
 Parker purchased insurance for the car in September 1983 from J.R. Laughlin Company of Corinth, Mississippi. In December 1983, Parker and Danny Kiddy took the cars and boat to Belk's salvage yard where they were wrecked. Kiddy and Parker then met appellant Holt at a restaurant to get the false police report of the "accident."
 
 
 4
 Parker submitted his insurance claim, accompanied by the police report, to J.R. Laughlin Insurance Company. The company referred the claim to an adjuster with Dickens and Challen, Inc. of Jackson, Tennessee. The adjuster mailed several reports to the Grain Dealers Insurance Company in Mississippi. Based on these reports, Grain Dealers mailed two checks to Dickens and Challen, for delivery to Evans. Parker's insurance claim was settled by a separate payment.
 
 
 5
 Appellants Holt and Evans moved for judgment of acquittal based on the fact that the government failed to prove by a preponderance of the evidence that venue was proper in Tennessee. The District Court found that there was sufficient evidence and denied the motions. Appellant Evans also made several post-trial motions, discussed below, which the District Court denied.
 
 
 6
 A defendant in a criminal suit is entitled to be tried in the district in which the crime is alleged to have been committed. See U.S. Const., amend. VI; U.S. Const., Article III, sect. 2; Fed.R.Crim.P. 18. For venue to be proper, the government must show by a preponderance of the evidence that the crime occurred in the same district as the trial. United States v. White, 611 F.2d 531, 534-36 (5th Cir.), cert. denied, 446 U.S. 992 (1980). The specific venue statute with regard to mail fraud is 18 U.S.C. Sec. 3237, which provides:
 
 
 7
 (a) Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.
 
 
 8
 Any offense involving the use of the mails ... is a continuing offense and ... may be inquired of and prosecuted in any district from, through, or into which such ... mail matter ... moves.
 
 
 9
 The substantive offense for which appellant was convicted is set out at 18 U.S.C. Sec. 1341, which holds anyone liable who:
 
 
 10
 having devised or intending to devise any scheme or artifice to defraud ... places in any post office or authorized depository for mail matter ... or knowingly causes to be delivered by mail according to the direction thereon (emphasis added).
 
 
 11
 Under Count One, appellants were convicted of causing Dickens and Challen of Jackson, Tennessee, to use the mail to send documents from Tennessee to Mississippi in connection with the settlement of the fraudulent accident claims. Similarly, under the conspiracy count, the government had to prove that a mailing had been made into or from Tennessee. We agree with the District Court that there was adequate evidence showing that part of the criminal offenses occurred in Tennessee.
 
 
 12
 At least two mailings indicate that part of the mail fraud occurred in Tennessee. First was a letter dated March 1, 1984, from a Mr. Tidwell, a claims adjuster with Dickens and Challen in Tennessee, sent to Grain Dealers Insurance Company in Mississippi. The letter requested a draft of $3,593.08 payable to L.C. Evans. Second was a draft dated March 5, 1984 and payable to L.C. Evans in the amount requested by Tidwell in the March 1 letter.[1] Tidwell confirmed receipt of this payment by a March 29, 1984 letter which contained Evans' release. Although the March 29 letter could not be relied upon to establish venue, see United States v. Maze, 468 F.2d 529 (6th Cir.1972), it was relevant to prove that the March 5 mailing had been received.
 
 
 13
 Appellants rely exclusively on United States v. Bolles, 528 F.2d 1190 (4th Cir.1975) in arguing that this evidence is insufficient to establish venue in Tennessee. In Bolles, the court stated that a "naked return address, unaccompanied by any other evidence which was readily available and not inquired about, is not sufficient proof of venue." Id. at 1193. In both Bolles and the present case, envelopes bearing postmarks which would prove actual mailing were not entered into evidence. Appellants argue that there was testimony that Mr. Tidwell spent time in Mississippi investigating the "accident" and that it is possible the correspondence was hand-delivered to Grain Dealers or placed into the mails in Mississippi. However, in this case there was independent evidence that tended to establish that the documents were mailed. Such evidence did not exist in Bolles where, indeed, the government had conceded that there was insufficient evidence of venue. Wilfred Foy, a claims supervisor at Grain Dealers, testified several times that the documents from Mr. Tidwell on behalf of Dickens and Challen were received through the mail. See Mr. Foy's testimony, Joint App. at 83-84, 89-90. Foy also testified that all correspondence received by Grain Dealers came from Tidwell rather than from any of the Mississippi defendants directly. Joint App. at 102. Although appellants maintain that it is possible Tidwell mailed the documents while in Mississippi, it is reasonable to infer that they were mailed from his office in Tennessee. The March 1 letter was typed on company letterhead. Nothing suggests Tidwell had an office in Mississippi. The letter bore the initials ST:mfm, the usual designation of a secretary who types a letter for another. It would seem more probable that it was typed and mailed from Tennessee rather than carried to Mississippi and mailed there. Other correspondence bore similar initials indicating a course of mailings from Tidwell's Tennessee office to Mississippi. There was evidence from which the jury could find interstate mailings on March 1 and March 5 in connection with appellants' scheme to defraud.
 
 
 14
 Appellant Evans argues that the five year statute of limitations was violated because the indictment was returned February 27, 1989 and the last act in furtherance of the conspiracy happened before February 27, 1984. However, the indictment charges that the appellants "on or about March 1, 1984" caused the mails to be used in their scheme to defraud. The earliest specific mailing for which appellant was indicted occurred on March 1, within the five year limitations period. The District Court appropriately denied Evans' request for a jury instruction on that issue because the letters, clearly dated to be within the limitations period, were part of an act in furtherance of the conspiracy.
 
 
 15
 Evans also argues that there was no evidence that he actually used the mails in conjunction with the scheme to defraud. Contrary to Evans' assertion, it is not necessary that the mailing be done by a member of the conspiracy. As previously noted, it is sufficient that the appellants caused the mails to be used, a requirement which was met when Tidwell mailed the correspondence to Grain Dealers and when Grain Dealers mailed the check to Tidwell.
 
 
 16
 Evans next argues that a juror submitted an affidavit testifying to the fact that some jurors expressed their opinion as to Evans' guilt before deliberations began. The District Court denied Evans' post-trial motion to set the verdict aside on those grounds. Evans' sole authority is Speed v. DeLibero, 19 Conn.App. 95, 561 A.2d 959, appeal granted in part, 212 Conn. 813, 565 A.2d 537 (1989), which set aside a jury's verdict after it was discovered that four of the six jurors engaged in a lunchtime deliberation of the evidence. However, this authority is easily distinguishable from the present appeal. There is no showing of prejudice that would warrant setting aside the jury's verdict as there was in Speed, which involved wholesale discussion of the evidence outside deliberations. The juror's affidavit that he wanted to hold out for acquittal, but did not, could not be used to impeach the jury's verdict. The District Court properly denied Evans' motion.
 
 
 17
 Accordingly, we AFFIRM the judgment of the District Court.
 
 
 
 [1]
 The District Court dismissed Count Two on the basis that there was no evidence as to where the draft was sent. It was in error in so ruling since Mr. Foy testified the draft was mailed to Dickens and Challen in Jackson, Tennessee. Testimony on Mr. Foy, Joint App. at 89