ELIZABETH HARRISON *v.* MUNIR HAMZI ET AL.
(AC 22499)

Lavery, C. J., and Foti and Dupont, Js.

Argued January 13—officially released June 17, 2003

*George E. Mendillo*, for the appellant (plaintiff).

*David J. Robertson*, with whom, on the brief, were *Garie J. Mulcahey* and *Catherine L. Creager*, for the appellee (named defendant).

*Opinion*

DUPONT, J. In this medical malpractice action, the plaintiff, Elizabeth Harrison, appeals from the judgment for the defendant, Munir Hamzi,[1] after a jury verdict in his favor. She claims that the trial court (1) abused its discretion in excluding certain medical expert testimony and (2) improperly denied her motion for an evidentiary hearing concerning alleged jury misconduct. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The plaintiff was diagnosed as having an enlarged right thyroid lobe, a goiter. She was referred to the defendant, a general surgeon, for an evaluation and a second opinion. Upon a physical examination, the defendant confirmed that the plaintiff had a retrosternal[2] thyroid goiter on the right side. The defendant explained to the plaintiff her options of leaving the goiter in place or having surgery to remove the goiter, and the risks associated with each option. Thereafter, the plaintiff elected to schedule surgery with the defendant for the removal of her right thyroid lobe and isth-

---

[1] Also named as defendants were Abdulmasih Zarif and St. Mary's Hospital Corporation. We refer in this opinion to Hamzi as the defendant.

[2] Retrosternal means extending below the sternum or breastbone.

mus.[3] The surgery performed is called a hemithyroidectomy or right thyroid lobectomy, which is the removal of the right lobe of the thyroid gland, and isthmectomy, which is the removal of the isthmus.

The experts who testified at trial[4] identified five different methods of performing the surgery. There was no unanimity among the experts, however, as to the efficacy of the methods or even as to the number of methods.[5]

---

[3] The isthmus is the connecting tissue between the right and left lobe of the thyroid gland.

[4] Paul Gryska testified as the plaintiff's expert, and Phillip McWhorter and the defendant testified as the defendant's experts.

[5] The five methods are a supracapsular dissection, a mediansternodomy, morcellization, intracapsular dissection and a tracheal approach. All three experts who testified at trial testified as to the method chosen by the defendant, the supracapsular dissection. That method involves removing the goiter in its entirety. The surgeon first identifies and protects the surrounding structures. Next, the surgeon clears the operative field, which enables the surgeon to remove the goiter by scooping it out with his finger.

The testimony differed on the number and type of other methods. The defendant testified that there were two methods other than supracapsular dissection. The first is a mediansternodomy. That alternative is appropriate when the physician has difficulty removing the goiter supracapsularly and cannot properly protect the recurrent laryngeal nerve because the thyroid is low in the chest and large. That method requires a surgeon to open the rib cage partially to remove the lobe of the thyroid gland. The other method identified by the defendant, morcellization, is performed subcapsularly, below the thyroid capsule. A subcapsular procedure requires the surgeon to open the thyroid capsule. Morcellization involves opening the thyroid capsule, breaking or cutting up the gland and suctioning out the contents through the opened portion of the capsule to reduce its size so that removal is possible. The defendant was not aware of any other methods of performing the surgery.

Paul Gryska, the plaintiff's expert witness, testified that there were two ways to perform the surgery subcapsularly, namely, morcellization and intracapsular dissection. Intracapsular dissection involves opening the capsule and removing the lobe in its entirety through the opening. Gryska also testified about a method called the tracheal approach, which involves approaching the thyroid from a different angle to enable better identification of the nerve. Gryska did not believe a mediansternectomy was ever appropriate to remove a goiter.

Phillip McWhorter, an expert witness for the defendant, testified only as

Following the surgery, the plaintiff complained of voice hoarseness. The defendant referred her to a speech therapist for an evaluation. After the evaluation, the plaintiff began treatment with Neil Schiff, a physician who determined that during the surgery, the plaintiff had suffered a permanent injury[6] to her recurrent laryngeal nerve causing right true vocal cord paralysis, which can result in voice dysfunction. The plaintiff testified at trial, which allowed the jury to assess any voice dysfunction.

## I

## EVIDENTIARY CLAIM

The plaintiff claims that the court abused its discretion in disallowing certain proffered expert testimony. The court's ruling, on which the plaintiff's basic claim is centered, was the sustaining of the defendant's objection to the plaintiff's question to her expert witness, Paul Gryska, regarding the probable result of the operation if one of the alternate methods had been used.

The following additional facts are relevant to the discussion of the plaintiff's claim. The defendant testified that he performed the procedure supracapsularly. He testified that there were three reasons he did not opt to do, or to change, during the operation, to any of the alternative methods for removal of the thyroid gland. The reasons were: (1) implementing a different option presented a greater risk to the plaintiff,[7] (2) hav-

---

to the supracapsular and mediansternectomy methods of removing a goiter. He was not aware of either subcapsular procedure or the tracheal approach.

[6] Schiff's testimony, if any, is not included in the transcripts of testimony supplied to us. The defendant testified that the injury was a stretching injury that occurred in the course of pulling out the goiter. Paul Gryska, the plaintiff's expert witness, testified that the nerve was severed, not stretched, because a stretching injury would not have been permanent.

[7] The defendant testified that opening the sternum increases the risk of infection and other surgical complications, and that a subcapsular procedure would spread cancer, if it existed. He testified that prior to surgery, there was no way to test the plaintiff's goiter to determine if it was cancerous, but there was a 5 percent to 7 percent statistical chance of cancer. After

ing identified and protected the nerve in the operative field, another option was not necessary, and (3) he did not have any difficulty in removing the thyroid supracapsularly.

The defendant also testified that he could not identify the nerve below one inch from the thyroid artery and that the only way to do that would be to perform a mediansternodomy. He testified that it was not necessary to protect the nerve further because it was protected in the operative field. He opined that the injury was a stretching injury caused when removing the goiter from the plaintiff's chest.

Following the defendant's testimony, the plaintiff called Gryska to testify. In an offer of proof to establish the basis of his testimony, Gryska testified that his opinion was based entirely on the deposition testimony of the defendant, the plaintiff's medical records and the written report on the plaintiff's surgery, but not on the defendant's in-court testimony because he had not heard it or reviewed it prior to testifying.[8] During the offer of proof, Gryska specifically testified that "whether it was done intra [sub] or extracapsular [supra] speaks to the surgeon's preference. However, a supracapsular . . . dissection done rapidly is not done carefully. So, it all speaks to speed." Further, in response to a question, "[a]re you going to testify . . . that [the defendant] deviated from the standard of care because he did [not perform] a subcapsular procedure?" he stated: "I am not going to [state] that that is the reason he deviated. I am going to testify, as I've said all along, that it was the speed at which he did whatever operation . . . ."

surgery, the goiter was tested and was found to have contained no cancerous cells.

[8] Gryska did testify that he "briefly" discussed the defendant's testimony with the plaintiff's counsel, but that his opinion was formed prior to that.

During Gryska's testimony to the jury, which was allowed, he repeated that opinion, explaining that it was not a breach of the standard of care to do the procedure supracapsularly, but that the operation was done too quickly to have been done correctly. The procedure was "done extraordinarily rapidly using a technique that is appropriate . . . when done very, very slowly and very meticulously." Gryska reiterated that testimony on numerous occasions throughout his testimony to the jury.

Gryska testified that the plaintiff's goiter extended three to four inches below the artery. Gryska further opined that the standard of care requires a general surgeon to identify the nerve over the entire course of the enlarged thyroid. In response to counsel's question summarizing the defendant's testimony that he could not identify and protect the nerve below one inch from the thyroid artery, Gryska testified that three *other options* are *available* at that point. He then explained the other methods.

Following that testimony, the plaintiff sought to ask Gryska the probable result if the defendant had performed one of the alternative methods identified by the plaintiff's expert, intracapsular dissection, morcellization or the tracheal approach.[9] The defendant objected on the ground that the question required "total speculation." After hearing arguments out of the presence of the jury, the court sustained the objection.[10]

---

[9] The precise question was: "Do you have an opinion based on reasonable medical probability as to whether or not had any of these three procedures you've mentioned had been performed in the case of [the plaintiff], whether she would have sustained an injury to her recurrent laryngeal nerve?" See footnote 5.

[10] The transcript indicates that the court concluded that the question would not elicit evidence probative of the issue before the jury, that is, whether the defendant meticulously, carefully and properly performed the procedure that he selected. The court's memorandum of decision on the plaintiff's motion to set aside the verdict on that issue indicates that the evidence was excluded because it was "immaterial and not germane."

The plaintiff claims that the court abused its discretion in excluding that evidence because Gryska's testimony was relevant to show the proximate cause of the plaintiff's injury.[11] The defendant argues that the evidence was irrelevant to the issue of whether he had breached the standard of care in his performance of the only relevant surgical option in this case, namely, supracapsular dissection. In light of all the evidence and arguments before the court, we conclude that the court did not abuse its discretion.

"The trial court has wide discretion in its rulings on evidence and its rulings will be reversed only if the court has abused its discretion or an injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Eagles*, 74 Conn. App. 332, 337 (2002), 812 A.2d 124, cert. denied, 262 Conn. 953, 818 A.2d 781 (2003). "In order to establish reversible error, the [plaintiff] must prove both an abuse of discretion and a harm that resulted from such abuse." (Internal quotation marks omitted.) *Bolmer* v. *McKulsky*, 74 Conn. App. 499, 504, 812 A.2d 869, cert. denied, 262 Conn. 954, 818 A.2d 780 (2003).

The defendant objected to the evidence on the ground that it was speculative, and the court excluded the evidence on the ground that it was irrelevant. Evidence is "too speculative if the record makes it clear that there was no basis for finding that the testimony would bear on relevant facts." *Burns* v. *Hanson*, 249 Conn. 809, 826, 734 A.2d 964 (1999). A relevant fact is one that "has a logical tendency to aid the trier in the determination of

---

[11] In her brief, the plaintiff also claims that the court precluded rebuttal evidence of the lack of a cancer risk associated with the alternative procedures. Although, in the course of argument on the objection at issue, the plaintiff suggested that she wanted to ask such a question, the plaintiff never actually posed a question as to the risk, or lack of a risk, of cancer in using the alternate methods. Thus, the court never ruled on such a question. We therefore do not consider this claim.

an issue." (Internal quotation marks omitted.) *Raybeck* v. *Danbury Orthopedic Associates, P.C.*, 72 Conn. App. 359, 378, 805 A.2d 130 (2002). "No precise and universal test of relevancy is furnished by the law, and the question must be determined in each case according to the teachings of reason and judicial experience." (Internal quotation marks omitted.) *State* v. *Eagles*, supra, 74 Conn. App. 337.

As a basis for her claim, the plaintiff highlights certain testimony by Gryska and the defendant. Specifically, she highlights the defendant's testimony that he could not identify and protect the nerve below one inch from the inferior thyroid artery[12] and Gryska's testimony that in that situation, there are three *other options* within the standard of care. Gryska further testified that the defendant severed the nerve, which he would not have done had he identified the entire nerve. Last, the defendant, himself, testified that the injury was caused to the nerve in the area where he had not identified and protected it. The plaintiff views that testimony as establishing the relevance of the evidence sought to be elicited by the question at issue.

That testimony, however, must be viewed in the context of the entire trial. Gryska also testified on numerous occasions that the defendant had not breached the standard of care by choosing to perform a supracapsular dissection, but because the defendant performed

---

[12] The written report on the plaintiff's surgery states that the defendant identified and protected the nerve. At oral argument, the plaintiff argued that the defendant's in-court testimony was a change in position from that representation, and that this change necessitated the need for, and relevance of, the inquiry of Gryska. The defendant's trial testimony was that he identified and protected the nerve in the operative field, the extent to which he believed was necessary. The only sentence in the operative report on the subject was that the "nerve was identified and protected." Due to the inherent terseness of that sentence, we view any discrepancy as one of degree, which the plaintiff explored during the examination of both the defendant and Gryska.

the operation too speedily. First, in the initial offer of proof, testing the basis of Gryska's expert testimony, Gryska repeatedly emphasized that he did not fault the defendant for choosing the supracapsular method, but that the quickness of the procedure was a breach of the standard of care, given the size and extent of the plaintiff's goiter.[13]

In Gryska's subsequent testimony to the jury, on direct, cross-examination and redirect examination, he explained that it is possible to avoid injury to the nerve in the performance of a supracapsular dissection if it is done in a meticulous, careful and painstaking way.[14] Even after being informed of the defendant's inability to identify the nerve, in response to a question by the court in the course of argument, Gryska stated that it was his opinion that the procedure was within the standard of care, but that the defendant deviated from

[13] During the offer of proof, the court further clarified that "[i]t wasn't that . . . the option that he selected . . . or the procedure that he followed was incorrect for the situation. It's just that he moved too rapidly and couldn't therefore be careful enough in performing that procedure." To which, Gryska responded: "Precisely. That's why my entire focus was on the speed."

[14] Later on direct examination, Gryska testified that "[i]t is possible to do a supracapsular dissection in a meticulous, careful, painstaking way . . . and thereby avoid injuring [the nerve]." He further stated that in doing the subcapsular procedure in this case, it is difficult and tedious, but possible to identify the nerve. At the end of direct examination, he stated that in his opinion, on the basis of reasonable medical probability, the "conduct of the procedure performed caused injury to the nerve, meaning it was done rapidly and without the appropriate care" and "that careful dissection, slow, meticulous care could have avoided injury to . . . the nerve."

On cross-examination, even after learning the extent to which the defendant identified the nerve, Gryska further reiterated this opinion. He stated that the type of procedure was well within the standard of care and that his sole criticism was that it was done too quickly. Additionally, he testified that the only reason he determined that the surgery was performed sloppily was because of the amount of time it took. He further stated that the supracapsular method is a very acceptable way to perform the surgery and it is within the standard of care. On redirect, he stated that you can avoid the nerve doing the supracapsular if you take the time.

that standard of care because he performed the surgery too quickly.[15] In fact, in colloquy with the court and opposing counsel during Gryska's testimony, the plaintiff's counsel himself stated that "Gryska's not saying that [the defendant] did the wrong procedure. He's saying that if he did the procedure he did, he couldn't have done it in fifty-five minutes and done it carefully."

In light of the abundance of testimony regarding Gryska's opinion that the breach was that the defendant had performed the procedure too quickly, his singular statement that when the general surgeon cannot identify the nerve below one inch from the thyroid artery, there are three *other options available*,[16] cannot be read to mean, as the plaintiff argues, that the standard of care *required* that the defendant conduct an alternate procedure. Notably, in responding to the plaintiff's counsel's question regarding what is *required* in the standard of care, Gryska used the word *available*, rather than *required*. Therefore, considering Gryska's repeated statements as to speed, a fair reading of his testimony is that there were three other options available, but they were not required within the standard of care as long as the option the defendant chose was done slowly and meticulously.

The breach, according to Gryska, was that the defendant performed the chosen method too quickly and,

---

[15] Additionally, in colloquy with the court and opposing counsel during Gryska's testimony, Gryska and the plaintiff's attorney confirmed that it was Gryska's opinion that "if you're careful and you're meticulous . . . [you can] identify the nerve if in fact you couldn't have identified it in the first instance."

[16] "[Plaintiff's Counsel]: What would the *standard of care* applicable to the general surgeons *require* a general surgeon to do in a case such as the case with [the plaintiff] where he can't identify the recurrent laryngeal nerve more then one inch below the inferior thyroid artery?

"[The Witness]: During the conduct of operation, there are—that he was doing, then there are three *other options* that are *available* to him at that point. They're all technical variations on removing the thyroid gland. . . ." (Emphasis added.)

therefore, did not execute it appropriately. Thus, although the plaintiff's counsel may have wanted and expected Gryska to testify that it was a breach of the standard of care for the defendant to not perform another method, Gryska did not so testify. Accordingly, the evidence related to the result of another method was irrelevant.

In light of Gryska's testimony that there was no breach of the standard of care by the defendant in choosing the supracapsular procedure, it was not an abuse of discretion to exclude, as irrelevant, the question regarding what would have happened if an alternate procedure had been performed. We conclude that the court did not abuse its discretion and that it acted in the proper exercise of its discretion.

## II

### JUROR MISCONDUCT

The plaintiff next claims that the court improperly denied her motion for an evidentiary hearing and her motion in arrest of judgment after hearing the arguments of counsel. Those motions relate to alleged juror misconduct. The following additional facts are relevant to this claim. Following the jury's verdict in favor of the defendant, the plaintiff's counsel spoke with two members of the jury. As a result of those conversations, the plaintiff filed a motion for an evidentiary hearing to establish jury misconduct and a motion in arrest of judgment for extrinsic causes on the basis of the alleged jury misconduct.

In support of her motion in arrest of judgment, the plaintiff's counsel submitted an affidavit, which represented that one juror had revealed to him that the jurors did not believe "that there was enough evidence to ruin [the defendant's] reputation," that no one "wanted to get [the defendant] in trouble," and that one juror "had

stated that doctors save lives and that the Plaintiff was lucky to be alive." At argument on the motions, the plaintiff's counsel further represented that he had spoken with a second juror who revealed that in the course of deliberations, the defendant's reputation was considered. That juror stated that the jury considered that the defendant had a good reputation as a surgeon, that he had never before been sued for malpractice or been found negligent and that his reputation would be injured if the jury found for the plaintiff.

The court, having accepted as true all of the representations made by the plaintiff's counsel, denied the plaintiff's motion for an evidentiary hearing. Additionally, after considering the representations, the court denied the plaintiff's motion in arrest of judgment. The court objectively considered the probable effect of those statements on the minds and the verdict of the jurors, and concluded that they did not cause the plaintiff prejudice.

The plaintiff's first claim regarding the alleged juror misconduct is that the court was required to hold an evidentiary hearing. She argues that without one, the court was unable to determine whether the alleged misconduct resulted from improper speculation or from consideration of extraneous information, or the degree to which the statements may have affected the jurors' impartiality. The defendant argues that because the court accepted all of the plaintiff's counsel's representations as true, no further information would be elicited at a hearing, making it unnecessary to hold an evidentiary hearing. We agree.

In *State* v. *Brown*, 235 Conn. 502, 526, 668 A.2d 1288 (1995) (en banc), our Supreme Court concluded that a trial court must conduct a preliminary inquiry, on the record, whenever it is presented with any allegations of jury misconduct in a criminal case. The court, however,

specifically, declined to decide whether that requirement applied to civil cases. Id., 526 n.27. In *Baldwin* v. *Jablecki*, 52 Conn. App. 379, 383, 726 A.2d 1164 (1999), a civil case, we stated, citing *Brown*, that "a specific allegation of juror misconduct requires some inquiry by the trial court." See also *Pineau* v. *Home Depot, Inc.*, 45 Conn. App. 248, 260, 695 A.2d 14 (1997), appeal dismissed, 245 Conn. 422, 713 A.2d 825 (1998).

We have yet to consider the extent of the required inquiry. Having already applied the rule to criminal cases, however, we see no reason why the extent of the required inquiry should be any different from that promulgated in *Brown*. "[T]he form and scope of such an inquiry lie within a trial court's discretion . . . . That form and scope may vary from a preliminary inquiry of counsel, at one end of the spectrum, to a full evidentiary hearing at the other end of the spectrum, and, of course, all points in between. Whether a preliminary inquiry of counsel, or some other limited form of proceeding, will lead to further, more extensive, proceedings will depend on what is disclosed during the initial limited proceedings and on the exercise of the trial court's sound discretion with respect thereto." *State* v. *Brown*, supra, 235 Conn. 526; see also *State* v. *Dorans*, 261 Conn. 730, 751–52, 806 A.2d 1033 (2002).

The court conducted an inquiry into the allegations of misconduct and accepted all of the plaintiff's counsel's representations as true. There is no basis in the record or the law for the requirement of a full evidentiary hearing. The plaintiff has not provided any evidence that the court's inquiry was insufficient, especially in light of the court's taking as true all the representations of counsel. Additionally, "where juror misconduct is claimed, jurors . . . [cannot] testify as to the impact of . . . incidents on their verdict. . . . [A]ny inquiry into the content of the opinion or the impact it had on the juror is clearly impermissible." (Citation omitted;

internal quotation marks omitted.) *Turk* v. *Silberstein*, 48 Conn. App. 223, 709 A.2d 578 (1998). Thus, the court was unable to conduct inquiry beyond what it already had accepted as true. We therefore conclude that the court did not abuse its discretion in failing to hold a full evidentiary hearing on the plaintiff's allegations of juror misconduct.

The plaintiff next claims that the court improperly determined that she had not demonstrated that the juror misconduct caused her prejudice. She argues that the facts as represented by her counsel, and taken as true by the court, demonstrate that the jury improperly allowed the reputation of the defendant and other extraneous information to influence its verdict and, therefore, the motion in arrest of judgment should have been granted. The defendant argues that the facts were not proven to be from extrinsic sources and that even if they were, they did not demonstrate juror misconduct.

"In reviewing juror misconduct, we use an objective standard in which the focus is on the nature and quality of the misconduct, rather than the mental processes of the jurors." *Speed* v. *DeLibero*, 19 Conn. App. 95, 561 A.2d 959 (1989). Therefore, having accepted the representations of counsel as true, "it [was] for the trial court to determine whether they warrant[ed] a reversal of the verdict." (Internal quotation marks omitted.) *Turk* v. *Silberstein*, supra, 48 Conn. App. 228. "The question is whether the misconduct is of such a nature as to make it probable that the misconduct resulted in prejudice and an unfair trial." *Speed* v. *DeLibero*, supra, 103; see also *Baldwin* v. *Jablecki*, supra, 52 Conn. App. 384. "[T]he burden rests on the moving party to demonstrate that the misconduct complained of resulted in probable prejudice to her." *Durso* v. *Aquilino*, 64 Conn. App. 469, 478, 780 A.2d 937 (2001).

Contrary to the plaintiff's assertions, there was testimony, during the trial, to which the plaintiff did not

object, regarding the defendant's reputation. In response to a question posed by the plaintiff's counsel, the defendant, referring to himself, stated that "you don't stay in practice for [twenty-one] years and you don't see any judges, basically." While being qualified as an expert, the defendant testified as to his background and experience as a surgeon. In fact, the plaintiff's expert stated that he had not heard that any other patients of the defendant had ever suffered a nerve injury. That testimony could establish a basis for any statements made during jury deliberations regarding the defendant having never been sued and his reputation as a good surgeon.

Other statements allegedly made by the jurors affecting the defendant's reputation are extrinsic to the record, but do not affect our conclusion. Because jurors cannot be expected to set aside their own knowledge and experience; *Purzycki* v. *Fairfield*, 244 Conn. 101, 113, 708 A.2d 937 (1998); such statements are common sense inferences or commonly held beliefs expected to arise when one participates as a juror in a malpractice case. Therefore, none of the representations by counsel demonstrate that improper matters were considered.

Further, the court instructed the jury not to consider the defendant's reputation in deliberating its verdict.[17] In the absence of an indication to the contrary, the jury is presumed to have followed such an instruction. *State* v. *Grenier*, 257 Conn. 797, 810, 778 A.2d 159 (2001).

Therefore, we conclude that not only do the statements not show jury misconduct, but there is no indication that the statements regarding the defendant's

---

[17] The court instructed the jury in relevant part: "[I]n arriving at your verdict . . . you must not allow yourself to be influenced by sympathy or prejudice against anyone. And certainly you would be violating your oath as jurors if you allow sympathy prejudice, or *any other improper consideration such as the effect of your decision on one's reputation, to influence your determination of this case.*" (Emphasis added.)

reputation were considered improperly by the jury to the prejudice of the plaintiff.

The judgment is affirmed.

In this opinion the other judges concurred.