EDWARD S. O'BRISKIE *v.* JOHN J. BERRY
(AC 26312)

Schaller, Harper and West, Js.

Argued January 9—officially released May 9, 2006

*Michael S. Hillis*, with whom was *Jennifer R. Barone*, for the appellant (plaintiff).

*Andrew S. Turret*, with whom, on the brief, was *Mark J. Schnitzler*, for the appellee (defendant).

*Opinion*

SCHALLER, J. The plaintiff, Edward S. O'Briskie, appeals from the judgment of the trial court, rendered after the jury verdict in favor of the defendant, John J. Berry, in a negligence action arising out of a motor vehicle accident.[1] On appeal, the plaintiff claims that the court improperly (1) denied his motions for a mistrial and for a new trial and to set aside the verdict, which were based on alleged juror bias or partiality, and (2) denied his motion for a new trial and to set aside the verdict because the verdict was against the weight of the evidence. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On February 6, 2001, the defendant left his home in Wallingford and drove to Mount Southington, a ski resort, where he worked as a ski instructor. There had been a snowstorm on the previous day. At approximately 7 p.m., the defendant left the ski area and headed

---

[1] The plaintiff also included a count in the original complaint alleging recklessness. The court directed a verdict in favor of the defendant at the close of trial on this count. That ruling is not contested on appeal.

home, stopping to run some errands on the way. The defendant drove a four wheel drive vehicle but did not have his vehicle in four wheel drive on his way home.

While driving home, the defendant took a series of highways, all of which were clear of snow. He then turned onto Cook Hill Road in Cheshire where he traveled in an easterly direction for three miles. Cook Hill Road was also clear of snow. The defendant, however, eventually encountered an area of the roadway that was covered in a hard packed mixture of snow and slush.[2] While traveling on this surface at approximately thirty miles per hour, the defendant experienced no traction problems until his car suddenly began to slide. The defendant unsuccessfully attempted to maneuver his vehicle to regain control. The defendant did not apply his brakes while his vehicle was sliding because he believed that braking on this surface would cause his vehicle to continue to slide. The defendant's vehicle crossed over the center line into the westbound travel lane and collided with the plaintiff's vehicle. The defendant testified that had he been traveling more slowly, the accident might not have occurred, but, at the time, he believed that he was traveling at a safe speed. Further facts will be set forth as necessary.

## I

The plaintiff first claims that the court improperly denied his motions for a mistrial and for a new trial and to set aside the verdict, which were based on alleged jury bias. The plaintiff asserts that the jury was biased in one of two ways. First, two jurors informed the court, after the first day of trial, that they either recognized the defendant or may have come into contact with him in the past. After hearing this, the court discharged the two jurors from service and swore in two alternates.

---

[2] This hard packed mixture was referred to as a "washboard" with intermittent areas of snow and pavement resulting in an uneven surface.

The plaintiff contends that the extent to which these two jurors may have "tainted" the rest of the jury with their knowledge of the defendant is unclear and that, without this knowledge, the plaintiff was deprived of a fair trial. Second, the plaintiff argues that a juror who remained on the jury recognized the trial judge, and this fact, combined with an alleged sarcastic comment by the court to the plaintiff's counsel, biased the jury in favor of the defendant. We are not persuaded.

The following additional facts are relevant to this issue. In January, 2003, the plaintiff commenced this action, alleging that his injuries and damages were a result of the foregoing accident on February 6, 2001. The case was tried to the jury from January 11 through 13, 2005. On the first day of trial, both the plaintiff and the defendant testified. At the beginning of the second day of trial, two jurors informed the court that they might have encountered the defendant previously. The court then inquired into the extent of each juror's familiarity with the defendant.

The first juror told the court that when the defendant began testifying, and provided his address, she realized that she had a family member who lived on the same street as the defendant. In addition, both the defendant and her relative had children approximately the same age, and she said that she might have encountered the defendant at her relative's house. The juror testified, however, that she did not recognize the defendant. In response to an inquiry by the court, the juror indicated that she might be concerned with the defendant's feelings depending on the outcome of the trial and that this could affect her deliberations in the jury room. Nevertheless, the juror believed that she could remain fair and impartial. Counsel for both parties declined the opportunity to inquire further.

The second juror revealed that he thought he recognized the defendant from a prior place of employment.

The juror then stated that he might feel uncomfortable sitting as a fair and impartial juror. Once again, counsel for both parties were given an opportunity to inquire and both declined to do so. The defendant's counsel then informed the court that the defendant had mentioned that the second juror looked familiar to him as well.

The court discharged both jurors from service. The plaintiff's counsel moved for a mistrial at this point, claiming that he could not be sure that these jurors had not spoken to the other members of the jury about their knowledge of or familiarity with the defendant and, thus, the plaintiff could not be assured of a fair trial. The court attempted to retrieve the excused jurors to inquire further. The second excused juror was found and brought back into the courtroom. The juror stated that he had told other members of the jury that he recognized the defendant, but indicated nothing more. The plaintiff's counsel then asked if any other jurors had mentioned anything with respect to any of the parties. The second excused juror responded that the first excused juror told him that she had recognized the defendant on their way out but that he did not hear her mention anything in front of the other jurors. The first excused juror was not found for additional questioning. Subsequently, the court denied the plaintiff's motion for a mistrial and the trial resumed.

Our standard for review of a trial court's decision on a motion for a mistrial and a motion to set aside a verdict is the same. See *Matthiessen* v. *Vanech*, 266 Conn. 822, 845, 836 A.2d 394 (2003); *Labatt* v. *Grunewald*, 182 Conn. 236, 240–41, 438 A.2d 85 (1980). "Our review of the trial court's action on a motion to set aside the verdict involves a determination of whether the trial court abused its discretion, according great weight to the action of the trial court and indulging every reasonable presumption in favor of its correct-

ness . . . since the trial judge has had the same opportunity as the jury to view the witnesses, to assess their credibility and to determine the weight that should be given to their evidence." (Citations omitted.) *Palomba* v. *Gray*, 208 Conn. 21, 24–25, 543 A.2d 1331 (1988). "In reviewing juror misconduct, we use an objective standard in which the focus is on the nature and quality of the misconduct, rather than the mental processes of the jurors." (Internal quotation marks omitted.) *Harrison* v. *Hamzi*, 77 Conn. App. 510, 523, 823 A.2d 446, cert. denied, 266 Conn. 905, 832 A.2d 69 (2003).

The extent of an inquiry into alleged juror bias is within the court's discretion. Id., 522; see also *State* v. *Brown*, 235 Conn. 502, 523–24, 668 A.2d 1288 (1995) (en banc). Our review is, therefore, limited to whether the court abused this discretion. See *State* v. *Brown*, supra, 524 ("trial judge's discretion, which is a legal discretion, should be exercised in conformity with the spirit of the law and . . . not to impede or defeat the ends of substantial justice" [internal quotation marks omitted]). In the present case, the court conducted a preliminary inquiry by individually questioning each allegedly biased juror. Following this inquiry, the court proceeded to dismiss the jurors from service. We see nothing improper with the way the court conducted its inquiry in this instance.

A

The plaintiff claims that the jury bias stems from the possibility that the two dismissed jurors may have discussed the defendant with the remaining members of the jury during any of the recesses taken during the first day of trial. The plaintiff claims that "it is impossible to know what else was said regarding the [d]efendant."

"[T]o succeed on a claim of bias the defendant must raise his contention of bias from the realm of specula-

tion to the realm of fact." (Internal quotation marks omitted.) *State* v. *Myers*, 242 Conn. 125, 141, 698 A.2d 823 (1997). The plaintiff has failed to raise his contention to the realm of fact. The plaintiff's counsel made the tactical decision not to question the two excused jurors regarding their conversations with the remaining jury members, to determine whether the jury had been tainted, before they officially were discharged. The court then brought the two jurors into the courtroom to discharge them.[3] After they left, the plaintiff made his motion for a mistrial. Despite the fact that counsel had declined to question the two jurors when given the opportunity, the court sent personnel to scour the courthouse in an effort to locate the dismissed jurors and to inquire as to their respective conversations, if any, with other jurors. The second excused juror was located and during additional inquiry informed the court that he had "just said [to the other members of the jury] that I recognized [the defendant]. . . . That was it." The juror also stated that no one else said anything in response and that he did not hear the other dismissed juror say anything to the other members of the jury. She told him only that she recognized the defendant on their way out. No information produced as a result of this inquiry raised the plaintiff's speculation as to jury bias to the realm of fact. Despite the fact that one juror mentioned that he recognized the defendant, we fail to see how this could be construed as biasing the other members of the jury in favor of the defendant.[4] We conclude that the court did not abuse its discretion

[3] Even if the plaintiff's counsel believed that it was inappropriate to question the jurors before their official discharge, or that it was not in his interest to question the jurors before knowing whether they would continue service on the jury for fear of resentment, at the time that they were brought back into the courtroom, he could have asked the court for further inquiry.

[4] Further, the fact that a juror stated, on his own, that he recognized the defendant does not give insight into the circumstances of his familiarity with the defendant or whether he viewed the defendant in a favorable or unfavorable light.

in denying the plaintiff's motions for a mistrial and to set aside the verdict and for a new trial on the plaintiff's first claim of juror bias.

## B

The plaintiff next claims that the court improperly denied his motion for a new trial and to set aside the verdict. The plaintiff specifically argues that the court's "sarcastic" comment during his rebuttal closing argument, combined with a juror's recognition of the trial judge, biased the jury in favor of the defendant. We disagree.

At the beginning of the plaintiff's rebuttal closing argument, counsel engaged in the following colloquy with the court:

"[The Plaintiff's Counsel]: Your Honor, may I respectfully inquire as to the amount of time I have left?

"The Court: Twenty—about twenty-five minutes.

"[The Plaintiff's Counsel]: Thank you, Your Honor.

"The Court: You don't—don't feel that you have to use them all."

After the jury had retired to deliberate, one juror informed the court that she was a neighbor of the judge and that she had seen him walking, running or jogging in the neighborhood. The plaintiff contends that this fact together with the court's alleged sarcastic comment tainted the jury and biased it in favor of the defendant. The plaintiff did not object to the comment by the court or allege any bias on the part of the juror who recognized the judge, or the jury as a whole, at any point prior to the verdict.

As previously stated, the standard by which we determine whether the court improperly denied a motion to set aside the verdict is whether the court abused its

discretion in so ruling. *Palomba* v. *Gray*, supra, 208 Conn. 24–25. The plaintiff concedes in his brief that a juror's recognition of a trial judge alone would not demonstrate bias toward a party but argues that this recognition, combined with a comment that may have sarcastic undertones,[5] demonstrated juror bias toward the defendant.

In its jury instructions following closing arguments and the allegedly sarcastic comment, the court stated in relevant part: "I don't have any preference as to the outcome of this case. I have not meant to convey by facial expression or *tone of voice* or in any other way at any time during the trial any preference or inclination as to how you should decide the facts." (Emphasis added.) "Our jurisprudence is clear . . . that unless there is a clear indication to the contrary, a jury is presumed to follow the court's instructions." *PSE Consulting, Inc.* v. *Frank Mercede & Sons, Inc.*, 267 Conn. 279, 335, 838 A.2d 135 (2004). Even if, as the plaintiff claims, the comment could be deemed sarcastic and caused the jury to infer that the plaintiff's remaining argument was unworthy of attention,[6] the court instructed the jury to disregard any possible tone that could convey the court's favoring of one party over another. The presumption that the jury followed these instructions defeats any claim of jury bias here.[7]

---

[5] It is not possible in this instance for us to determine from the reading of the record alone whether the comment was "sarcastic."

[6] This does not appear to be a reasonable interpretation of the court's comment that the plaintiff's counsel need not use the entire amount of time allotted.

[7] For the first time, at oral argument, the plaintiff asserted that this presumption should not apply in this case. The plaintiff argued that each of the remaining jury members could all be viewed as having disregarded the court's previous instructions that they were to inform the court if they heard any comments about the case or the parties in the case. After one of the dismissed jurors told the other members of the jury that he recognized the defendant, each of the remaining jurors should have come forward and noted that there was a violation of the court's instruction not to discuss the parties in the case. This claim was not raised at trial, in the plaintiff's

## II

Finally, the plaintiff claims that the court improperly denied his motion to set aside the verdict as being against the weight of the evidence. As previously noted, the proper standard of appellate review of the denial of a motion to set aside a verdict is whether the court abused its discretion. *Palomba* v. *Gray*, supra, 208 Conn. 24–25. "In considering a motion to set aside the verdict, the court must determine whether the evidence, viewed in the light most favorable to the prevailing party, reasonably supports the jury's verdict. . . . The trial court's refusal to set aside the verdict is entitled to great weight and every reasonable presumption should be indulged in favor of its correctness." (Citation omitted.) *Mather* v. *Griffin Hospital*, 207 Conn. 125, 139, 540 A.2d 666 (1988).

"A court is empowered to set aside a jury verdict when, in the court's opinion, the verdict is contrary to the law or unsupported by the evidence. . . . A verdict should not be set aside, however, where it is apparent that there was some evidence on which the jury might reasonably have reached its conclusion. . . . In analyzing a sufficiency of the evidence claim, the test that we employ is whether, on the basis of the evidence before the jury, a reasonable and properly motivated jury could return the verdict that it did. . . . On appellate review, therefore, we will give the evidence the most favorable reasonable construction in support of the verdict to which it is entitled." (Citations omitted; internal quotation marks omitted.) *Marchell* v. *Whelchel*, 66 Conn. App. 574, 582, 785 A.2d 253 (2001); see also *Harris* v. *Clinton*, 142 Conn. 204, 209–10, 112 A.2d 885 (1955).

The plaintiff asserted multiple grounds in his complaint on which the jury could have found the defendant

---

motion to set aside the verdict or in the plaintiff's briefs. We therefore decline to address this contention.

negligent. On appeal, he argues that the jury verdict was against the weight of the evidence in three ways. First, the plaintiff argues that the evidence clearly showed that the defendant was statutorily negligent in failing to abide by General Statutes § 14-218a.[8] Second, he argues that the evidence clearly showed that the defendant was statutorily negligent in failing to abide by General Statutes § 14-231.[9] Finally, the plaintiff contends that the evidence clearly showed that the defendant was negligent under the common law. We conclude that the jury reasonably could find that there was insufficient evidence that the defendant was negligent in any of these respects.

"In order to predicate a recovery on the ground of statutory negligence, two elements must coexist. . . . [T]he violation of the statute must constitute a breach of duty owed to the plaintiff. . . . Second, a plaintiff must prove that the violation of the statute . . . was a proximate cause of his injuries." (Internal quotation marks omitted.) *Blancato* v. *Randino*, 33 Conn. App. 44, 48, 632 A.2d 1144, cert. denied, 228 Conn. 916, 636 A.2d 846 (1993).

A

Section 14-218a prohibits a person from operating his motor vehicle at a rate of speed greater than reasonable under all conditions of the roadway. Construing the

[8] General Statutes § 14-218a provides in relevant part: "No person shall operate a motor vehicle upon any public highway of the state . . . or upon a private road on which a speed limit has been established in accordance with this subsection . . . at a rate of speed greater than is reasonable, having regard to the width, traffic and use of highway, road or parking area, the intersection of streets or weather conditions. . . ."

[9] General Statutes § 14-231 provides: "Drivers of vehicles proceeding in opposite directions shall pass each other to the right, and upon highways having width for not more than one line of traffic in each direction each driver shall give to the other at least one-half of the main-traveled portion of the highway as nearly as possible. Violation of any provision of this section shall be an infraction."

evidence in the light most favorable to the defendant, the jury reasonably could have found that the defendant did not operate his vehicle at an unreasonable speed under the conditions and did not violate his statutory duty.

After driving his motor vehicle on a series of roadways that were clear of snow despite a snowstorm the previous day, the defendant encountered a patch of snow and slush. The posted speed limit was thirty-five miles per hour. The defendant was operating his vehicle at thirty miles per hour. While driving over this snowy patch of the roadway, the defendant did not experience any traction problems until his vehicle suddenly began to slide.

The jury reasonably could have concluded that after driving on clear roads, encountering a patch of snow and slush, and proceeding on that roadway under the posted speed limit, while experiencing no traction problems in his vehicle, the defendant was not operating his vehicle at an unreasonable speed for the conditions and, therefore, was not negligent under the statute.

B

Section 14-231 requires drivers, while driving on roadways that provide for only one lane of traffic in each direction, to give "at least one-half of the main-traveled portion of the road *as nearly as possible*" to the other vehicle approaching in the opposite direction. (Emphasis added.) The jury reasonably could have concluded, from the evidence presented, that the defendant was driving in his own travel lane and was providing one half of the roadway for oncoming traffic in the opposite direction. When his car lost traction, due to the snow and slush on the roadway, the defendant's vehicle slid. The jury reasonably could have found that although the defendant did not yield half of the roadway, he did yield as much of the roadway as was *possible* under the

conditions presented.[10] The jury could have found, therefore, that the defendant did not voluntarily cross into the oncoming lane of travel, did not breach a duty under the statute and, thus, was not negligent.[11]

## C

In addition, the plaintiff asserts a claim of common-law negligence, in that the defendant failed to exercise reasonable care under the circumstances. In defining common-law negligence and the defendant's duty of reasonable care to the jury, the court instructed, "[n]egligence is the violation of a legal duty which one person owes to another for the safety of that person. It's the failure to exercise reasonable care under the circum-

---

[10] The predecessor to General Statutes § 14-231, General Statutes (1949 Rev.) § 2489 (a), provides in relevant part that "[a]ny person, when driving, operating or having the custody of a vehicle on the highway, who shall meet any person . . . driving or operating a vehicle in the traveled portion of such highway, shall reduce its speed . . . and seasonably turn to the right so as to give half of the traveled portion of such highway, *if practicable,* and a fair and equal opportunity to the person so met to proceed . . . ." (Emphasis added.) Section 2489 has been interpreted to require a voluntary act on the part of the driver in order for a violation to have occurred. A mere accident stemming from a condition of the roadway that was not the fault of the driver, as in this case, in which snow on the roadway caused the driver's vehicle to skid into oncoming traffic, would not be a violation of the statute. See *Grantham* v. *Bulik,* 137 Conn. 640, 642, 80 A.2d 515 (1951) (holding that "the defendant's invasion of the part of the highway to his left of the center line was involuntary [where the defendant applied his brakes and slid on ice into oncoming traffic and that] the statute quoted [was] inapplicable"). "[I]f practicable" in § 2489 is similar to the "as nearly as possible" language in § 14-231. This in turn would require a voluntary act on the part of the defendant, which was lacking in the present case.

[11] Despite the fact that we do not reach the issue of proximate cause due to our finding that the jury could have concluded that the defendant did not violate the statute and, thus, was not negligent, the jury verdict would also be justified by a finding that the condition of the roadway was the proximate cause of the accident and not the defendant's negligence, if any had been found. See *Blancato* v. *Randino,* supra, 33 Conn. App. 48 (holding that jury could have reasonably concluded that conditions of roadway and not defendant's negligence were proximate cause of accident where defendant was driving vehicle under speed limit, vehicle slid on ice, and defendant's efforts to brake and maneuver vehicle could not prevent accident).

stances. . . . In determining the care that a reasonably prudent person would use in the same circumstances, you should consider all the circumstances which were known or should have been known to the defendant *at the time of the conduct in question*." (Emphasis added.) See 2 D. Wright & W. Ankerman, Connecticut Jury Instructions (Civil) (4th Ed. 1993) § 522 (c).

The plaintiff claims that the defendant admitted liability, in admitting negligence, by an answer in response to a question from the plaintiff's counsel that if he had been driving more slowly, the accident might not have happened.[12] We disagree.

As noted, the jury instructions indicate that the reasonableness of the defendant's actions must be judged at the time of the allegedly negligent conduct. The defendant, while on his way home from Mount Southington, traveled on two highways, which were clear of snow, and then for three miles on Cook Hill Road, which was also clear of snow. Given those conditions, the defendant did not have his vehicle in four wheel drive because it was unnecessary. At the time the defendant encountered the "washboard" snow; see footnote 2; he was traveling thirty miles per hour, five miles per hour under the posted speed limit. The defendant experienced no traction problems while traveling on the "washboard" surface for twenty-five to thirty seconds. It was not until then that his vehicle began to slide. In response to sliding, the defendant unsuccessfully attempted to maneuver his vehicle by turning the wheel toward the direction that his vehicle was sliding in an effort to regain control.

---

[12] The defendant's testimony during questioning by the plaintiff's counsel was as follows:

"Q. If you had been going slower, would you still have been into that slide?

"A. I believe that's correct.

"Q. You do.

"A. I believe I would. If I was going slower, if I knew any better, it might not have happened."

The jury reasonably could have concluded that the defendant's conduct was not unreasonable in these circumstances. During the entire drive from the mountain until the defendant reached the "washboard" conditions on the highway, the defendant experienced no problems. While traveling on the snowy surface, under the speed limit, the defendant experienced no traction problems for twenty-five to thirty seconds. His vehicle then began to slide, and he did everything in his power to regain control of the vehicle. Despite the fact that the defendant admitted that, in hindsight, had he been traveling slower, the accident *might* not have happened, this statement is not an admission of negligence or liability. The evidence before the jury indicates that under the circumstances as the defendant knew them to exist, *at the time of the alleged negligent conduct*, the defendant exercised reasonable care in the operation of his motor vehicle.

The judgment is affirmed.

In this opinion the other judges concurred.