# STATE OF CONNECTICUT *v.* JOSE VAZQUEZ
# (AC 30057)

Lavine, Beach and Alvord, Js.

Argued November 9, 2009—officially released February 9, 2010

*Cameron R. Dorman,* special public defender, for the appellant (defendant).

*Adam E. Mattei,* special deputy assistant state's attorney, with whom, on the brief, were *John C. Smriga,* state's attorney, *Jonathan C. Benedict,* former state's attorney, and *Howard S. Stein,* assistant state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. The defendant, Jose Vazquez, appeals from the judgment of conviction, rendered after a jury trial, of assault in the first degree in violation of General Statutes § 53a-59 (a) (1) and carrying a dangerous weapon in violation of General Statutes § 53-206 (a).[1] On appeal, the defendant claims that the trial court (1) abused its discretion in denying his motion for a new trial, (2) improperly permitted the state to introduce a piece of evidence and (3) violated his due process rights by diluting the state's burden of proof. We disagree and affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant was dating Jennifer Serrano, the victim's cousin. In June, 2006, the victim, Billy Lopez, and some of his relatives were involved in a verbal

---

[1] The defendant also was charged with attempt to commit murder in violation of General Statutes §§ 53a-49 and 53a-54a (a), and conspiracy to commit assault in the first degree in violation of General Statutes §§ 53a-48 and 53a-59 (a). The jury found the defendant not guilty of those charges.

altercation with the defendant and the defendant's friends. A few days later, on June 29, 2006, the victim and his relatives assaulted the defendant.

Bridgeport held its Puerto Rican Day Parade on July 9, 2006. The victim and one of his cousins, Eddie Velez, walked to Seaside Park, where the parade concluded, to meet the victim's son and the child's mother. When the victim arrived at Seaside Park, he did not find whom he was looking for but, rather, found two of the defendant's friends with whom the victim argued. The victim and Velez walked away from the defendant's friends toward the area where the victim had seen his mother and other family members when he was walking to Seaside Park.

As the victim was hugging his mother and his son, he sensed someone behind him. When he turned around, he saw the defendant. The victim and the defendant argued, the defendant told the victim he wanted to fight, and the victim punched the defendant. The defendant fell to the ground, and a melee ensued. The victim punched the defendant while the defendant was on his knees, at which point the defendant pulled a butterfly knife from his back pocket and stabbed the victim in the stomach. The defendant removed the knife and ran away from the victim as another person stabbed the victim a second time. When the victim awoke in a hospital, he told the police that the defendant had stabbed him.

The defendant was later arrested in Florida. The jury found him guilty of assault in the first degree and carrying a dangerous weapon. This appeal followed.

I

The defendant's first claim is that the court abused its discretion in denying his motion for a new trial. Specifically, the defendant argues that the verdict was

based on physically impossible conclusions and that the state's witnesses were so lacking in credibility that the conviction constituted a miscarriage of justice. We disagree.

"[T]he proper appellate standard of review when considering the action of a trial court granting or denying a motion to set aside a verdict and motion for a new trial . . . [is] the abuse of discretion standard. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. . . . We do not . . . determine whether a conclusion different from the one reached could have been reached. . . . A verdict must stand if it is one that a jury reasonably could have returned and the trial court has accepted." (Internal quotation marks omitted.) *Bolmer* v. *McKulsky*, 74 Conn. App. 499, 510, 812 A.2d 869, cert. denied, 262 Conn. 954, 818 A.2d 780 (2003).

A

The defendant first contends that the verdict was based on physically impossible conclusions. He argues that it would be physically impossible for him to inflict the wounds on the victim's left side given that he is left-handed. The defendant also argues that it would have been impossible for him to have retrieved the knife from his right rear pocket, as witnesses testified. Finally, the defendant asserts that it would have been impossible for the butterfly knife, which he allegedly used, to have inflicted the wound.

The following additional facts are relevant to the resolution of the defendant's claim. At trial, the state presented witness testimony that the defendant pulled

the knife from the right rear pocket of his pants. Additionally, a medical expert testified that the wounds suffered by the victim were consistent with those inflicted by someone who was holding the knife in his right hand. The defendant testified, however, that he is left-handed.

The defendant also introduced evidence that he asserts tends to show that the butterfly knife that the victim claims that the defendant used in the attack was incapable of causing the victim's wounds. A medical expert testified that the victim's deepest internal injury was approximately three inches from the surface of the skin. The only evidence as to the length of the defendant's butterfly knife was from one witness who testified that the blade's length was about the width of three fingers. The court estimated the width of three fingers to be about three inches. The testimony adduced at trial further indicated that Jio Villafane, a friend of the defendant, possessed a knife[2] that was approximately two and one-quarter to two and one-half inches wide. The victim's wound was only one and three-quarters inches wide.

After the conclusion of evidence, the defendant moved for a new trial. He argued that there was no evidence proving beyond a reasonable doubt that he had or used a weapon on July 9, 2006, that the only evidence of a knife at the scene was the large knife possessed by Villafane, one of the state's witnesses, and that the evidence proved that the wounds were caused by a right-handed person.[3] The court denied

---

[2] Villafane testified that on the day of the fight, he had an eight inch hunting knife, which he unsheathed and waved around to force the other fighters to retreat.

[3] The defendant, in his motion for a new trial, also argued that the admission of "an online description of a butterfly knife" and the at the scene identification, made by the victim's father and uncle, of Jio Villafane and Anthony Villafane, who are brothers, as the people who stabbed the victim required a new trial. He does not, however, raise these arguments on appeal.

the defendant's motion, and the defendant renews the argument on appeal.

"One cogent reason for overturning the verdict of a jury is that the verdict is based on conclusions that are physically impossible. [A] verdict should be set aside [w]here testimony is thus in conflict with indisputable physical facts, the facts demonstrate that the testimony is either intentionally or unintentionally untrue, and leave no real question of conflict of evidence for the jury concerning which reasonable minds could reasonably differ." (Internal quotation marks omitted.) *State* v. *Hammond*, 221 Conn. 264, 268, 604 A.2d 793 (1992). "Scientific evidence is relevant to a determination of what is physically impossible." Id., 269.

Even if we assume arguendo that the jury accepted the defendant's testimony that he is left-handed, this does not lead to the logical conclusion that he could not have used his right hand to stab the victim. "[I]t is axiomatic that jurors [i]n considering the evidence introduced in a case . . . are not required to leave common sense at the courtroom door . . . nor are they expected to lay aside matters of common knowledge or their own observations and experience of the affairs of life . . . ." (Internal quotation marks omitted.) *State* v. *King*, 289 Conn. 496, 521–22, 958 A.2d 731 (2008). It is well within the common knowledge of jurors that, even if a defendant was left-handed, he could use his right hand to stab a victim. Left-handedness is not such a condition that it renders someone's right hand unusable. No scientific evidence was presented from which the jury could have concluded that the defendant could not use his right hand to stab the victim.

The defendant's contention that his knife could not possibly have caused the victim's injury similarly fails on appeal. He argues that the wound could have been caused by Villafane's knife. The record simply does not

support that contention. Villafane's knife was too wide to have caused the wound the victim suffered. Furthermore, the defendant's knife, contrary to his argument on appeal, was long enough to cause the victim's injuries. There is no evidence tending to show that it was physically impossible for the defendant, using his butterfly knife, to cause the victim's injuries. The defendant presented no evidence that the jury reasonably could not have found as it did.

B

The defendant also argues that the court abused its discretion in denying his motion for a new trial because the state's witnesses were so lacking in credibility that the conviction constituted a miscarriage of justice. We disagree.

"In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . Finally, it is beyond question that the trier of fact . . . the jury, is the arbiter of credibility. This court does not sit as an additional juror to reconsider the evidence or the credibility of the witnesses." (Citation omitted; internal quotation marks omitted.) *State* v. *Rivera*, 74 Conn. App. 129, 136, 810 A.2d 824 (2002). "Whether [a witness'] testimony [is] believable [is] a question solely for the jury. It is . . . the absolute right and responsibility of the jury to weigh conflicting evidence and to determine the credibility of the witnesses." (Internal quotation marks omitted.) *State* v. *Harris*, 85 Conn. App. 637, 654, 858 A.2d 284, cert. denied, 272 Conn. 901, 863 A.2d 695 (2004).

The defendant claims that Villafane's and the victim's "intentional lies," in addition to their biases toward the

defendant, cast doubt on their credibility. Although it is true that the victim's testimony differed from Villafane's in some respects, the jury was free to make credibility determinations and believe whatever testimony it found credible. Furthermore, the supposed biases against the defendant, namely, the ongoing feud between the victim and the defendant, as well as Villafane's plea agreement, allegedly hinging on his testifying against the defendant, merely provide further information on which the jury made its credibility determinations. The jury reasonably could have found either the victim, Villafane or both credible. The court did not abuse its discretion in declining to grant the defendant's motion for a new trial.

## II

The defendant next claims that the court improperly permitted the state to introduce a piece of evidence. The defendant argues that the picture of a butterfly knife, though not the knife used in this case, was prejudicial and misleading. Because the defendant did not preserve his claim at trial and did not adequately brief his request for plain error review,[4] we do not address this claim.

The defendant claims on appeal that the introduction of the picture of the butterfly knife was prejudicial and misleading. At trial, however, he objected to the introduction of the exhibit because of a lack of foundation. The defendant made no mention of prejudice or misleading the jury in his objection. We therefore decline to review this claim because it was preserved improperly at trial.

The defendant argues that even if we find that the claim was improperly preserved at trial, the claim is

---

[4] See footnote 5 of this opinion.

reviewable under the plain error doctrine.[5] He claims that the error is "so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State v. Day*, 233 Conn. 813, 849, 661 A.2d 539 (1995).

This state's appellate courts have routinely stated that "[w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . Where a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." (Internal quotation marks omitted.) *Smith* v. *Andrews*, 289 Conn. 61, 80, 959 A.2d 597 (2008).

The defendant's brief offers no plain error analysis. He merely presents the claim in a subsection of his brief in which he cites *State* v. *Day*, supra, 233 Conn. 849, but does not analyze the claim. We are not required to consider such inadequately briefed claims and will not do so in this instance.

## III

The defendant's final claim is that the court violated his federal and state due process rights by diluting the state's burden of proof. Specifically, he contends that the court's instruction that proof beyond a reasonable

---

[5] Practice Book § 60-5 states in relevant part: "The [reviewing] court may reverse or modify the decision of the trial court if it determines that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record, or that the decision is otherwise erroneous in law.

"The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

doubt is "proof that precludes every reasonable hypothesis except guilt and is inconsistent with any other rational conclusion" misled the jury because of the use of the words "rational" and "hypothesis." We do not agree.

At the conclusion of the trial, the court charged the jury. The court instructed that the state had the burden of establishing each element beyond a reasonable doubt. The court then gave the following instruction with regard to reasonable doubt: "Reasonable doubt. What does the term reasonable doubt mean? The phrase reasonable doubt has no technical or unusual meaning. The meaning of reasonable doubt can be arrived at by emphasizing the word reasonable. It is not a surmise, a guess, or mere conjecture. It is such a doubt as in serious affairs that concern you, you would heed. That is, such a doubt as would cause reasonable men and women to hesitate to act upon it in matters of importance. It is not hesitation springing from any feelings of pity or sympathy for the accused or any other persons who might be affected by your decision. It is, in other words, a real doubt, an honest doubt, a doubt that has its foundation in the evidence or lack of evidence. It is a doubt that is honestly entertained and is reasonable in light of the evidence after a fair comparison and careful examination of the entire evidence.

"On the other hand, proof beyond a reasonable doubt does not mean proof beyond all doubt. The law does not require absolute certainty on the part of the jury before it returns a verdict of guilty. The law requires that after hearing all the evidence, if there is something in the evidence or lack of evidence that leaves in the minds of the jurors as reasonable men and women a reasonable doubt as to the guilt of the accused, then the accused must be given the benefit of that doubt and acquitted. *Proof beyond a reasonable doubt is proof that precludes every reasonable hypothesis except guilt*

*and is inconsistent with any other rational conclusion."* (Emphasis added.)

Following the court's charge, the defendant objected, with regard to the reasonable doubt instruction, questioning the instruction that one person's testimony is enough to establish guilt beyond a reasonable doubt on all charges. The court explained that this instruction accurately portrayed the law, and defense counsel responded: "Thank you. I only objected for technical reasons. I think your charge was excellent."

Although the defendant claims that his general objection to the instructions preserved the issue for appellate review, he nevertheless requests review under *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989). On appeal, the defendant does not claim, on the basis of his objection at trial, that the court improperly charged the jury. The defendant, therefore, must satisfy the familiar four prongs of *State* v. *Golding,* supra, 239–40, for his claim to succeed.

A defendant can prevail on an unpreserved claim only if *"all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id. The record in this case is adequate for review and the claim is of constitutional magnitude.

"In harmony with the objective of *Golding,* [a] defendant's claim may be disposed of by focusing on whichever condition is most relevant in the particular circumstances. . . . A defendant may prevail under the third prong of *Golding* on a claim of instructional error

only if, considering the substance of the charge rather than the form of what was said, it is reasonably possible that the jury was misled." (Internal quotation marks omitted.) *State* v. *Bivrell*, 116 Conn. App. 556, 563, 976 A.2d 60 (2009).

"Reasonable doubt is a concept easily comprehended but difficult to define. That this is so is manifested by the numerous appeals engendered over the years by the definitions, clarifications and amplifications of the phrase, which various courts have attempted. Each apparently slight deviation from language that previously has been approved seems to spawn a new appeal. In the light of our established standard of review, however, the claim that a phrase taken in isolation dilutes the state's burden of proof or casts some burden of proof on the defendant usually must fail. Our Supreme Court has pointed out frequently that when a jury instruction is challenged, the charge is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . In determining whether it was . . . reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding [it] to a correct verdict in the case." (Internal quotation marks omitted.) *State* v. *Mussington*, 87 Conn. App. 86, 90–91, 864 A.2d 75, cert. denied, 273 Conn. 914, 870 A.2d 1084 (2005).

The instruction given in this case is nearly identical to the instruction this court upheld in *State* v. *Howard*, 88 Conn. App. 404, 428–29, 870 A.2d 8, cert. denied, 275 Conn. 917, 883 A.2d 1250 (2005).[6] Although the

---

[6] The reasonable doubt instruction challenged in *State* v. *Howard*, supra, 88 Conn. App. 428 n.9, reads: "Let's talk about reasonable doubt. The meaning of reasonable doubt can be arrived at by emphasizing the word reasonable. It is not a surmise, a guess or mere conjecture. It is not a doubt suggested

defendant argues that this instruction was inappropriate and misleading under the facts of this case, we see no reason why this case is distinguishable from the myriad other cases in which this court or our Supreme Court has approved of similar language. See, e.g., *State v. Wallace*, 290 Conn. 261, 962 A.2d 781 (2009); *State v. Johnson*, 288 Conn. 236, 951 A.2d 1257 (2008); *State v. Jones*, 82 Conn. App. 81, 841 A.2d 1224, cert. denied, 269 Conn. 912, 852 A.2d 741 (2004). We conclude that the instruction in this case did not dilute the state's burden of proof and thus there was no constitutional violation. The defendant's final claim fails under the third prong of *Golding*.

The judgment is affirmed.

In this opinion the other judges concurred.

by counsel which is not warranted by the evidence. It is such a doubt as, in serious affairs that concern you, you would heed. That is, such doubt as would cause reasonable men and women to hesitate to act upon it in matters of importance. It is not hesitation springing from any feelings of pity or sympathy for the accused or any other person who might be affected by your decision. It is, in other words, a real doubt, an honest doubt, a doubt that has its foundation in the evidence or lack of evidence. It is a doubt that is honestly entertained and is reasonable in light of the evidence after a fair comparison and careful examination of the entire evidence.

"Proof beyond a reasonable doubt does not mean proof beyond all doubt. The law does not require absolute certainty on the part of the jury before it returns a verdict of guilty. The law requires that after hearing all the evidence, if there is something in the evidence or lack of evidence that leaves in the minds of the jurors, as reasonable men and women, a reasonable doubt as to the guilt of the accused, then the accused must be given the benefit of that doubt and acquitted. Proof beyond a reasonable doubt is

---

proof that precludes every reasonable hypothesis except guilt and is inconsistent with any other rational conclusion." (Internal quotation marks omitted.)