MINERVA LACHIRA ET AL. *v.* SUTTON AND SUTTON ESQUIRES ET AL.
(AC 34266)

DiPentima, C. J., and Beach and Pellegrino, Js.

---

Argued January 14—officially released May 28, 2013

*Richard H. G. Cunningham,* for the appellant (plaintiff).

*Kenneth J. Mastroni,* with whom was *Cynthia Coccomo,* for the appellees (defendant James J. Sutton et al.).

*Opinion*

DiPENTIMA, C. J. The plaintiff Minerva Lachira[1] appeals from the denial of her motion to set aside the jury's verdict in favor of the defendants James J. Sutton (Sutton) and Stanford Guy Sutton, executor of the estate of Stanford H. Sutton.[2] On appeal, the plaintiff claims that the trial court abused its discretion in denying her motion to set aside the verdict. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The relationship between the plaintiff and her landlord, Stanford H. Sutton, which had begun in 1999, was fraught with conflict. On December 19, 2005, Sutton, at the time his father's agent, went to the plaintiff's apartment, along with his maintenance worker, Graham Leavey, in order to supervise repairs and to take photographs of damages to the premises. The plaintiff was

---

[1] The plaintiff originally filed on behalf of herself and her then minor son. The son elected not to pursue the complaint and withdrew from the case in 2010.

[2] The operative complaint named Sutton & Sutton Esquires, Sutton Real Estate, LLC, Stanford H. Sutton, Stanford Guy Sutton and James J. Sutton as the defendants. The estate of Stanford H. Sutton, Stanford Guy Sutton as executor, was substituted as a party following the death of Stanford H. Sutton. The other defendants were removed from the case, according to the plaintiff's brief and docketing statement as well as the judgment file and trial transcript. We therefore refer to James J. Sutton and Stanford Guy Sutton, in his capacity as executor of the estate of Stanford H. Sutton, as the defendants.

home, Leavey having arranged an appointment with her by telephone. After gaining entry to the apartment, Sutton began photographing damage. The plaintiff became agitated and told Sutton to leave, whereupon both he and Leavey left the apartment. Thereafter, Sutton and the plaintiff each called the police.[3]

A police officer arrived and interviewed Sutton, Leavey, and the plaintiff. The plaintiff claimed that Sutton had "barged" into the apartment without her permission and had hurt her wrist. She told the officer that, after forcing his way in, Sutton brushed past her roughly in order to take photographs, causing her to feel "violated" and further injuring her. Sutton, when interviewed, denied having forced his way in or having hurt the plaintiff. Both he and Leavey told the police officer that they came into the plaintiff's apartment with her permission. The officer, a certified paramedic, observed no signs of injury. Because he could not substantiate the plaintiff's injury complaints with either the physical evidence or other witnesses, the police officer made no arrests. Hours later, the plaintiff went to the hospital and was treated for visible redness to her left arm. The next day, the plaintiff arrived at the police station to have photographs taken of her injury. She showed the officer her right arm, which had four vertical marks that she claimed resulted from her encounter with Sutton.

The plaintiff commenced this action against the defendants, seeking damages for the injuries that she claimed to have sustained as a result of the incident. In her complaint, she alleged common-law trespass and battery, as well as a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.[4] The defendants filed an answer denying

---

[3] The plaintiff called the police to report the alleged conduct by Sutton. Sutton called the police to report a landlord-tenant incident, and to report that the plaintiff had allegedly threatened his family.

[4] The plaintiff's operative complaint did not explicitly outline the plaintiff's common-law claims. The court, in the presence of counsel, determined that

all three counts. A jury trial commenced on November 4, 2011, and evidence concluded on November 8, 2011. The jury returned a verdict in favor of the defendants on November 9, 2011. On November 10, 2011, the plaintiff filed a motion to set aside the verdict. The court, *Hon. Edward R. Karazin, Jr.*, judge trial referee, held a two day hearing, and, on December 28, 2011, denied the motion and rendered judgment in accordance with the jury's verdict. On January 17, 2012, the plaintiff filed a motion for a rehearing on the issue of juror misconduct, which the court denied. This appeal followed.

The plaintiff claims that the court abused its discretion in denying her motion to set aside the verdict because (1) the verdict was against the weight of the evidence and (2) juror misconduct deprived her of a fair trial. We disagree.

"The standard of review governing our review of a trial court's denial of a motion to set aside the verdict is well settled. The trial court possesses inherent power to set aside a jury verdict [that], in the court's opinion, is against the law or the evidence. . . . [The trial court] should not set aside a verdict [when] it is apparent that there was some evidence [on] which the jury might reasonably reach [its] conclusion, and should not refuse to set it aside [when] the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles. . . . Ultimately, [t]he decision to set aside a verdict entails the exercise of a broad legal discretion . . . that, in the absence of clear abuse, we shall not disturb." (Internal quotation marks omitted.) *Weyant* v. *Kristy*, 126 Conn. App. 180, 183, 10 A.3d 119 (2011).

the complaint encompassed the battery and trespass claims as well as the alleged CUTPA violation. Counsel did not object.

I

The plaintiff first argues that the trial court abused its discretion by denying her motion to set aside the verdict as to her trespass and battery claims because the verdict is against the weight of the evidence. The plaintiff directs us to "physical evidence" of her injuries, which she alleges precluded the jury from finding for the defendants. The defendants, in response, argue that the evidence submitted to the jury supports the verdict in their favor. We agree with the defendants.

Notwithstanding our deferential standard of review, the plaintiff argues that, under *Mlynar* v. *A. H. Merriman & Sons, Inc.*, 114 Conn. 647, 159 A. 658 (1932), we must conclude that the court was obliged to set aside the verdict. We disagree.

In *Mlynar*, our Supreme Court provided: "When testimony is thus in conflict with indisputable physical facts, the facts demonstrate that the testimony is . . . untrue, and leave no real question of conflict of evidence for the jury . . . ." Id., 650.[5] In that case, the plaintiff alleged that the defendant had negligently driven his milk truck into the road, into the path of the plaintiff's car, causing the plaintiff to collide with him. Id., 649. On the basis of the uncontradicted testimony as to the location of the defendant's truck after the accident, however, the plaintiff's version of the story was impossible. Id., 649–50. The court therefore set aside the verdict finding for the plaintiff and ordered a new trial. Id., 651.

The plaintiff's reliance on *Mlynar* is misplaced. "For the rule [of *Mlynar*] to apply, the facts must be so indisputable that contrary testimony must either be intentionally or unintentionally untrue and there is no

---

[5] See also *State* v. *Hammond*, 221 Conn. 264, 268, 604 A.2d 793 (1992); *State* v. *Vazquez*, 119 Conn. App. 249, 254, 987 A.2d 1063 (2010).

real question of evidence concerning which reasonable minds could reasonably differ." *Lessow* v. *Sherry*, 133 Conn. 350, 354, 51 A.2d 49 (1947). The plaintiff in the present case contends that the evidence of the marks on her arms prove that her testimony is true. All that evidence establishes, however, is that she sustained those injuries, not how and when they occurred. The plaintiff also contends that a drawing of the premises admitted into evidence showed that Sutton must have had substantial contact with the plaintiff. We disagree. The physical evidence does not indisputably prove the plaintiff's version of the incident.

Applying the law of *Mlynar* and *Lessow* to this case, we cannot say that the physical evidence compelled a verdict for the plaintiff. To begin, the jury had no obligation to believe the plaintiff's testimony. See *Weyant* v. *Kristy*, supra, 126 Conn. App. 184 ("[i]n addition to believing the defendant's testimony, the jury may well have found that the plaintiff was not credible"). The jury further heard evidence that the plaintiff had been convicted of perjury. In addition, her testimony at trial and her statements to the police before trial were inconsistent.

Additionally, the plaintiff's testimony was contradicted by the testimony of the police officer who reported to the scene. When he first looked at her arm, which she claimed had been injured by Sutton when he allegedly forced his way into the apartment, the officer found no sign of injury. The officer testified that he believed that Sutton had not had more than casual contact with the plaintiff. He observed that, because of the chair behind the plaintiff where she said she had been standing when Sutton passed her, anything more than casual contact would have caused her to fall, which she stated did not occur.

Sutton and Leavey contradicted the plaintiff's testimony as well. Both men testified that the plaintiff

invited Sutton into her apartment after asking him to remove his shoes, and that the plaintiff asked Sutton to leave only when he began taking photographs of the damage to her apartment. Both men also denied that Sutton had done more than brush up against the plaintiff. There was evidence to support the jury's verdict. See id., 184. Accordingly, we conclude that the court did not abuse its discretion in denying the motion to set aside the verdict.

II

The plaintiff next argues that the court abused its discretion in denying her motion to set aside the verdict because of juror misconduct. Her allegation arises from an alleged gesture of support for Sutton made by one of the jurors. The plaintiff claims that the court abused its discretion with respect to the alleged juror bias by: (1) not finding the alleged gesture to be juror miscon- duct depriving her of a fair trial and (2) not conducting a more substantial hearing on the matter. We disagree with both claims.

"Our review of the trial court's action on a motion to set aside the verdict involves a determination of whether the trial court abused its discretion, according great weight to the action of the trial court and indulging every reasonable presumption in favor of its correct- ness . . . . In reviewing juror misconduct, we use an objective standard in which the focus is on the nature and quality of the misconduct, rather than the mental processes of the jurors." (Citation omitted; internal quo- tation marks omitted.) *O'Briskie* v. *Berry*, 95 Conn. App. 300, 305–306, 897 A.2d 605 (2006).

The following additional facts are necessary for the resolution of these claims. On November 9, 2011, the court delivered its charge to the jury and then excused the jurors for lunch recess. As the jury was exiting the courtroom, one of the jurors raised both of his hands

to his face as he passed Sutton. He also turned to look in Sutton's direction on his way out. The jury commenced its deliberations after recess and reached a verdict that same day. After the court accepted the verdict, the court asked counsel if they had any concerns with the jury; counsel for both parties said no. The next day, the plaintiff filed a motion to set aside the verdict in which she alleged, inter alia, juror bias.

The court responded to the allegations of juror bias by holding a hearing over two days. During the hearing, the court permitted the parties to watch a courtroom security video recording, on which the alleged gesture by the juror was captured, and heard arguments from both parties. The court itself viewed the video recording in the presence of the parties and counsel, both at full speed and at one-quarter speed. On the basis of that evidence, the court found that there had been no juror misconduct and, thereafter, denied the plaintiff's motion for a further evidentiary hearing.

A

We first address the plaintiff's claim that the trial court abused its discretion in finding that there had been no juror misconduct. "[T]he burden is on the moving party in a civil proceeding to establish that juror misconduct denied him a fair trial. . . . That burden requires the moving party to *demonstrate* that the juror misconduct complained of resulted in probable prejudice to the moving party." (Emphasis added; internal quotation marks omitted.) *Sawicki* v. *New Britain General Hospital*, 302 Conn. 514, 522, 29 A.3d 453 (2011). "[T]o succeed on a claim of bias the [party seeking review] must raise his contention of bias from the realm of speculation to the realm of fact." (Internal quotation marks omitted.) *O'Briskie* v. *Berry*, supra, 95 Conn. App. 306–307.

In its memorandum of decision denying the motion to set aside the verdict, the court found that there had been no juror misconduct: "It appears to this court that the juror was adjusting his glasses, and there does not appear to be a smile on his face . . . . The old saying is that where there is smoke, there is fire. In this situation, there is not even a hint of smoke. The actions of the juror do not express favoritism or predetermination."

We cannot say that, in so finding, the court abused its discretion. The plaintiff's principal argument is that the still image that she captured from the security video recording shows "that the juror not only saluted (with two hands) but turned to face [Sutton] and smiled when doing so . . . ." The plaintiff essentially argues that this "salute" was a guarantee of support from this juror for Sutton and that the alleged gesture would have precluded him from rendering a fair decision. The defendants' counsel disagreed, arguing that the juror was looking at both parties, not just Sutton: "[A]t one point he definitely looks over to [the plaintiff's counsel] *just as much as he looked over to the defense side of the table.*" The defendants' counsel also pointed out that his hands "come up in the vicinity of his glasses and he does wear glasses," suggesting that all he was doing was adjusting his glasses. The defendants' counsel also disagreed that the juror's looking back was necessarily at Sutton: "[H]e could have been looking out the window for all we know." The court reasonably could have agreed with the arguments made by the defendants' counsel as to the meaning of the alleged gesture and the look back.

We also note that the issue of juror misconduct was not raised in a timely manner. In *Bernier* v. *National Fence Co.*, 176 Conn. 622, 627–28, 410 A.2d 1007 (1979), the court held that "it was incumbent upon the plaintiff to make a request for such remedial action as was felt necessary, at that time, and not to reserve possible objections until after an adverse verdict was rendered."

More recently, this court affirmed the trial court's rejection of a juror misconduct claim in part because of its untimeliness in *Denniston* v. *Cash Home Center, Inc.*, Superior Court, judicial district of New London, Docket No. CV-08-0548288-S (October 10, 2001), aff'd, 76 Conn. App. 906, 819 A.2d 943 (2003). The trial court relied upon *Denniston*. Here, the plaintiff and her counsel both had witnessed the alleged gesture and had at least five opportunities to address it with the court,[6] including being asked specifically whether there were any issues with the jury. The plaintiff did not raise her concern until after the verdict, and, indeed, after the jury had been discharged. It was reasonable for the court to consider the untimeliness of the plaintiff's juror misconduct claim in denying her motion.[7] The court did not abuse its discretion in denying the motion to set aside the verdict because of juror misconduct.

## B

The plaintiff also claims that the court should have granted her motion for a rehearing and should have held a further evidentiary hearing to determine the meaning of the alleged gesture. We are not persuaded.

The form and scope of inquiry into juror misconduct "may vary from a preliminary inquiry of counsel, at one end of the spectrum, to a full evidentiary hearing at the other end of the spectrum, and, of course, all points in between. Whether a preliminary inquiry of counsel, or some other limited form of proceeding, will lead to further, more extensive proceedings will depend on what is disclosed during the initial limited proceedings and on the exercise of the trial court's sound discretion

[6] The trial court noted that the issue of the alleged gesture could have been raised immediately after court reconvened following lunch recess, or when the jury began its deliberations, or while the jury was deliberating, or prior to the court accepting and recording the verdict, or after the court accepted and recorded the verdict, but before the court dismissed the jury.

[7] We do not decide whether the plaintiff waived her claim of jury misconduct by failing to do so in a timely manner.

with respect thereto. *State* v. *Brown*, [235 Conn. 502, 526, 668 A.2d 1288 (1995) (en banc)]." (Internal quotation marks omitted.) *Harrison* v. *Hamzi*, 77 Conn. App. 510, 522, 823 A.2d 446, cert. denied, 266 Conn. 905, 832 A.2d 69 (2003).

In the present case, the court's actions fell in between the two ends of the spectrum discussed in *Harrison* v. *Hamzi*, supra, 77 Conn. App 522. On the basis of "what [was] disclosed during the initial limited proceedings," the court in the present case held a hearing, where it viewed evidence and heard arguments on the law. See id. Importantly, the court did not merely conclude that the plaintiff had failed to show that the juror's gesture was evidence of misconduct. The court found, on the contrary, that the gesture definitively was not misconduct: *"The actions of the juror do not express favoritism or predetermination."* (Emphasis added.) The plaintiff argues that if the video recording and her counsel's testimony do not prove that there was misconduct, they raise sufficient concern so as to compel further investigation. The trial court clearly disagreed. It was within its discretion to determine at what point it could make a decision about juror bias. See id.; see also *O'Briskie* v. *Berry*, supra, 95 Conn. App. 306. The court did not abuse its discretion in denying the plaintiff's motion to rehear and hold a further evidentiary hearing.

The judgment is affirmed.

In this opinion the other judges concurred.